ATANASIA MIRANDA, como madre con patria potestad de su menor hija CARMEN LYDIA MIRANDA, demandante, apelada y apelante, *v.* RAMÓN CACHO VEGA, demandado, apelante y apelado.

Núm. 9305.—*Sometido:* Junio 5, 1946. *Resuelto:* Julio 26, 1946.

*Félix Ochoteco Jr.,* y *Luis E. Dubón,* abogados del apelante apelado;
*E. Pérez Casalduc,* abogado de la apelada apelante.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda radicada por Atanasia Miranda, ''como madre con patria potestad de su menor hija Carmen Lydia Miranda'', se alega que Atanasia y Ramón Cacho Vega, el demandado, vivieron en público concubinato y que como fruto de esas relaciones amorosas nació la niña Carmen Lydia en febrero 17 de 1929, siendo en esa fecha la demandante y el demandado solteros y en condiciones para haber podido contraer matrimonio. En la súplica se solicita ''se dicte sentencia declarando a la demandante hija natural reconocida del demandado, con los demás pronunciamientos consiguientes''.

Contestó el demandado negando todos los hechos de la demanda. Fué el pleito a juicio y la corte inferior dictó sentencia declarando: (a) que ha sido probada la paternidad

del demandado con respecto a la demandante Carmen Lydia Miranda; y (b) que si bien el demandado es padre de la menor demandante, ésta "no tiene el concepto legal de hija natural y sí el de hija ilegítima", con derecho solamente a exigir de su padre alimentos, conforme a los artículos 128 y 143 del Código Civil, ed. 1930. Ambas partes apelaron.

Consideraremos primero el recurso de la demandante.

■ Alega la apelante que la corte inferior erró al resolver que no procedía declarar a la menor hija natural reconocida, porque en el momento de su concepción la madre no hubiera podido contraer matrimonio con el demandado, por haber sido concebida la menor antes de finalizar el término de 301 días que fija el artículo 70 del Código Civil, ed. 1930, para que la mujer divorciada pueda contraer nuevas nupcias.

Los hechos establecidos por la prueba son como sigue: Atanasia Miranda contrajo matrimonio con Francisco Galán en junio 18 de 1923. En noviembre 2 de 1926 Atanasia radicó demanda de divorcio alegando que en julio 26 de 1923, Galán la abandonó y trasladó su residencia a la ciudad de New York, en donde se encontraba en la fecha de la radicación de la demanda. El demandado fué citado por edictos y no habiendo contestado la demanda, en diciembre 16 de 1927, la Corte de Distrito de Arecibo decretó el divorcio.

En la vista del presente caso Atanasia Miranda declaró que ella decidió divorciarse cuando el demandado empezó a requerirla de amores; que su marido estaba en New York desde 1923; que se divorció y en seguida se fué a vivir con el demandado a principios de 1928; que en el mismo mes en que empezó a vivir con el demandado sintió los síntomas del embarazo; que la niña nació en el 1929; que desde que su marido se ausentó no tuvo relaciones con él ni con ningún otro hombre hasta que se fué a vivir con el demandado, después de haberse divorciado. Del acta de nacimiento ofrecida en evidencia por la demandante aparece que la niña nació el día 16 de febrero de 1929.

La evidencia ofrecida en pro y en contra de la alegada paternidad del demandado es contradictoria. La corte inferior resolvió el conflicto en contra del demandado; y siendo la prueba de la demandante, creída por la corte sentenciadora suficiente para sostener la conclusión de que la niña es hija del demandado, no estamos autorizados para alterar dicha conclusión.

■■ La cuestión primordial a resolver en este caso es si de acuerdo con los hechos probados, erró la corte inferior al declarar que la niña no tiene el concepto de hija natural.

"Son hijos naturales" dice el art. 125 del Código Civil, "los nacidos fuera de matrimonio, de padres *que al tiempo de la concepción de aquéllos hubieran podido* casarse sin dispensa o con ella." (Bastardillas nuestras.) ¿Podían casarse Atanasia Miranda y Ramón Cacho con dispensa o sin ella cuando fué concebida Carmen Lydia a principios de 1928, es decir, dentro de los 301 días siguientes a la disolución del matrimonio de Atanasia Miranda con Francisco Galán? La pregunta la contesta terminantemente el art. 70 del Código Civil al prescribir:

"Son incapaces para contraer matrimonio:

"...

"6. La viuda durante los trescientos un días siguientes a la muerte de su marido, o antes de su alumbramiento si hubiere quedado encinta, y la mujer cuyo matrimonio hubiere sido declarado nulo o disuelto en los mismos casos y términos, a contar desde la fecha de la nulidad y disolución".

Estando Atanasia Miranda incapacitada para contraer matrimonio en la fecha en que su hija fué concebida, dicha señora y Ramón Cacho Vega no podían entonces contraer matrimonio sin dispensa o con ella, y por consiguiente la hija de ellos no podía ser hija natural.[1] Se arguye que habiendo nacido la niña el 17 de febrero de 1929, o sea, a los

[1] Este precepto legal ha sido variado por la Ley núm. 229 de 12 de mayo de 1942 ((1) pág. 1297), enmendada por la núm. 243 de 12 de mayo de 1945 (pág. 815).

catorce meses de haberse decretado él divorcio, el nacimiento tuvo lugar después de transcurridos los 301 días siguientes a la disolución del matrimonio y que si el demandado y Atanasia Miranda hubiesen contraído matrimonio antes del nacimiento de Carmen Lydia, el matrimonio sería convalidado de acuerdo con la doctrina establecida en *Cintrón* v. *Román*, 36 D.P.R. 484.

La circunstancia de que en la hipótesis de un matrimonio contraído por Ramón Cacho con Atanasia Miranda en el cual la niña hubiera nacido después de los 301 días del divorcio, ese matrimonio hubiera sido anulable, no implica que los contrayentes tuvieran capacidad para contraer matrimonio. Los contratos de los menores de edad mayores de dieciocho años son anulables y nadie podría alegar que por ese hecho dichos menores tienen capacidad legal para contratar.

Ya hemos visto que el criterio para determinar el *status* de hijo natural es la circunstancia de que al tiempo de la concepción del hijo nacido fuera de matrimonio, sus padres hubieran podido casarse sin dispensa o con ella. El hecho de que de haberse casado los padres antes del nacimiento del hijo, éste tenga status de legítimo, no tiene relación alguna con la cuestión en controversia. Vamos a demostrarlo: $X$, un hombre casado, tiene acceso a $Z$, una mujer soltera y de esa unión nace un hijo. Después de concebido, pero antes de nacer el hijo, $X$ enviuda y contráe matrimonio con $Z$. No hay duda que el hijo es legítimo, bien de acuerdo con el art. 113 del Código Civil que declara hijos legítimos a los nacidos después de los 180 días siguientes a la celebración del matrimonio y antes de los 300 días siguientes a su disolución, ya de conformidad con el art. 114 dispositivo de que "igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnáre su legitimidad." Empero, si el matrimonio entre $X$ y $Z$ no llega a celebrarse, como sucedió en el presente caso, a nadie se le ocurriría sostener que el hijo de $X$

y $Z$—a pesar de haber sido concebido cuando su padre era casado—es un hijo natural porque si $X$ y $Z$ se hubieran casado antes de su nacimiento, el hijo hubiera sido legítimo.

Los criterios para determinar la legitimidad, la legitimación o el estado de hijo natural son distintos. Para la legitimidad basta que el hijo haya nacido después de contraído el matrimonio, aunque al tiempo de la concepción los padres estuviesen incapacitados para contraerlo. Artículos 113 y 114 del Código Civil. Para la legitimación por un subsiguiente matrimonio—el cual contempla que el hijo nació antes de su celebración—es requisito indispensable que el hijo tenga el status de hijo natural. Artículos 119 y 120 del Código Civil. Y, por último, para que el hijo tenga el concepto de natural, es preciso que al tiempo de la concepción sus padres hubieran podido casarse sin dispensa o con ella.

Pudiera también argüirse que como de la prueba practicada resulta que cuando se decretó el divorcio, Francisco Galán, el marido de Atanasia Miranda, se hallaba ausente en Nueva York desde julio de 1923, la niña no podía ser hija de Galán, y no existiendo posibilidad de confusión respecto a su paternidad, Atanasia Miranda no estaba incapacitada para contraer matrimonio con Ramón Cacho cuando la niña fué concebida. Esa circunstancia quizás podría alegarse si el marido Francisco Galán hubiera tratado de impugnar la legitimidad de la niña, de conformidad con el art. 113 del Código Civil. Pero el Código Civil no establece esa circunstancia como una excepción al inciso 6 del art. 70, ni hemos encontrado comentarista· alguno que sostenga esa proposición.

Habiendo declarado la corte a quo que la niña era hija del demandado, no siendo ella hija natural y habiendo nacido ella fuera de matrimonio, necesariamente era una hija ilegítima y como tal, con derecho a alimentos. Es verdad que la demandante no solicitó ser declarada hija ilegítima,

pero como de las alegaciones y de la prueba resulta que lo era, no erró la corte inferior al conceder a la demandante el remedio a que tenía derecho. Regla 54(c) de Enjuiciamiento Civil.

Consideraremos ahora el recurso interpuesto por el demandado.

■ En el primer señalamiento se alega que la corte inferior erró al no desestimar la demanda, por no alegarse en ella hechos suficientes para que la corte pudiera conceder a la demandante el remedio que solicita. Sostiene el demandado apelante que no habiendo Atanasia Miranda interpuesto la demanda en su capacidad representativa, como madre natural de la menor, que es la parte realmente interesada, la acción no debe prosperar. Cita en apoyo de su contención la decisión de este Tribunal en *Olivo* v. *Arriví,* 38 D.P.R. 717, 718 y 719.

Es fácil distinguir el citado caso del de autos. La acción en aquel caso fué interpuesta a nombre de Angela A. Olivo, como demandante. La demanda en el caso ante nos ha sido interpuesta por "Atanasia Miranda, como madre con patria potestad de su menor hija Carmen Lydia Miranda, demandante". La súplica de que se dicte sentencia "declarando a la demandante hija natural reconocida del demandado" es una clara indicación de que la demandante es la hija, representada por su madre natural Atanasia Miranda. Sería absurdo interpretar la súplica de la demanda en el sentido de que Atanasia, la madre, pide que se le declare a ella hija natural de su concubino. No erró la corte al resolver que la demanda es suficiente.

■ Se alega en el segundo señalamiento que la corte inferior erró al no desestimar la demanda una vez demostrado que la menor demandante no podía alegar con éxito su condición de hija natural.

Ya hemos resuelto que la corte a quo no erró al declarar que la demandante no tiene la condición de hija natural re-

conocida del demandado. El demandado apelante ha tratado en vano de convencernos de que la sentencia recurrida es errónea en cuanto por ella se reconoce a la demandante la condición de hija ilegítima del demandado. Toda su argumentación se basa en un ataque colateral a la sentencia de divorcio dictada en diciembre 16 de 1927, con el propósito de demostrar que cuando la menor demandante fué concebida y cuando nació, su madre Atanasia Miranda estaba aún casada con Francisco Galán, teniendo, por tanto, la niña, la presunción de hija legítima de Francisco Galán y de Atanasia Miranda, y que esa presunción no ha sido destruída por la prueba que requiere la ley. El ataque colateral a la sentencia de divorcio no fué hecho ante la corte inferior, habiéndose levantado la cuestión por primera vez en el alegato del demandado apelante.

La única prueba que la demandante estaba obligada a presentar para establecer el hecho de que en la fecha de su nacimiento su madre no estaba casada, era la sentencia de divorcio. Esa sentencia tiene a su favor la presunción de ser válida y de haber sido dictada por una corte con jurisdicción sobre la materia y sobre las partes. La hemos examinado y no encontramos en ella nada que pueda afectar su validez.

La regla establecida por la jurisprudencia de California es que una sentencia es nula, por su faz (*upon its face*), solamente cuando ese hecho resulta aparente de un examen del legajo de la sentencia—*People* v. *Thomas*, 101 Cal. 571. Cuando el emplazamiento se ha hecho mediante la publicación de edictos el *affidavit* y la orden para la publicación de los edictos no son partes del legajo de la sentencia y no pueden ser tomados en consideración. *People ex rel. Schwartz* v. *Temple*, 103 Cal. 447; *Canadian and American Mortgage and Trust Co.* v. *Clarita Land and Investment Co.*, 140 Cal. 672; *People* v. *Davis*, 143 Cal. 673; 15 Cal. Jur. 45.

No apareciendo de la faz de la sentencia de divorcio ni del legajo de la misma motivo o razón alguna que pueda jus-

tificar una declaración de nulidad; y no habiendo el demandado apelante presentado prueba alguna para sostener su alegación de que ciertos requisitos para la citación por edictos no fueron cumplidos, nos vemos precisados a resolver que la presunción de validez que a su favor tiene toda sentencia no ha sido controvertida. Véanse: *Estate of James McNeil*, 155 Cal. 333; *Crouch* v. *Miller & Co.*, 169 Cal. 341; *Hamblin* v. *Supreme Court*, 195 Cal. 364.

*Por las razones expuestas procede declarar sin lugar los recursos interpuestos. La sentencia recurrida será confirmada,*

OPINION DISIDENTE DEL JUEZ ASOCIADO SR. CORDOVA CON LA
CUAL CONCURRE EL JUEZ ASOCIADO SR. SNYDER.

Agosto 1, 1946.

Disiento de aquella parte de la sentencia y opinión de la Corte que resuelve que la demandante no es hija natural del demandado.

Fué concebida la demandante dentro de los 301 días del divorcio de su madre. ¿Podían sus padres contraer matrimonio en esa época? El artículo 70 del Código Civil, interpretado literalmente, contesta esa pregunta en la negativa. Dispone que la viuda o divorciada carece de capacidad para contraer matrimonio durante los 301 días a contar de la muerte de su esposo o de la sentencia de divorcio. Si nos atenemos a la letra del artículo 70, la madre de la demandante no podía casarse en la época de la concepción de ésta. No tenía capacidad entonces para contraer matrimonio.

Pero es que el artículo 70 no debe leerse literalmente. Todos los jueces de esta Corte están conformes en que su alcance fué debidamente interpretado en *Cintrón* v. *Román*, 36 D.P.R. 484, donde se resolvió que no era nulo el matrimonio contraído por una divorciada a los dos meses de la sentencia de divorcio, sino anulable, y que no podía ser anulado una vez transcurridos los 301 días a contrar de la fecha de la sentencia de divorcio. Dijimos entonces:

". . . Sería violentar el tenor del artículo 178(¹) si se dijera que la prohibición que se impone a la viuda o a la mujer divorciada . . . es un requisito esencial para contraer matrimonio. . . ."

El caso de *Cintrón* v. *Román,* supra, resuelve pues que la viuda o divorciada *puede* casarse dentro de los 301 días de haber enviudado o haberse divorciado, que tiene *capacidad* para contraer matrimonio. Siendo ello así, la demandante es hija natural del demandado, puesto que sus padres pudieron haberse casado en la época de su concepción.

El caso de autos no difiere esencialmente del caso de un hijo de padres solteros, siendo la madre menor de dieciséis años. Dice el artículo 70 del Código que las mujeres menores de dieciséis años carecen de capacidad para contraer matrimonio. Pero añade (como añade el caso de *Cintrón* v. *Román,* supra, algo similar respecto a la "incapacidad" de la viuda o divorciada) que el matrimonio quedará convalidado si la mujer concibe antes de la pubertad legal o antes de entablarse acción de nulidad. ¿Es natural el hijo concebido por una mujer soltera antes de sus dieciséis años, siendo soltero el padre? Creo que indudablemente lo es. La "incapacidad" de la madre no excluye la posibilidad de que contraiga matrimonio para la fecha de la concepción. Puede contraer matrimonio, y de contraerlo, queda convalidado al concebir. Igual ocurre con la viuda o divorciada. La "incapacidad" durante el término de 301 no le impide la posibilidad de contraer matrimonio. Si lo contrae y no da a luz hasta después de expirado el término de 301 días, ni hay posibilidad de confusión en cuanto a la paternidad, ni adolece el matrimonio de vicio alguno. No debe la viuda o divorciada casarse antes de los 301 días, como no debe hacerlo la mujer menor de dieciséis años. Pero puede hacerlo, y si lo hace puede resultar perfectamente válido, *ab initio,* el matrimonio.

---

(¹)Código Civil de 1902, equivalente al artículo 110 de la edición del Código de 1930.

560

Concluyo que, al concebirse la demandante, sus padres podían contraer matrimonio, y que la demandante tiene derecho por lo tanto a que se le declare hija natural, y no hija ilegítima, del demandado.