APOLINAR DE JESÚS y MATILDE DE JESÚS, demandantes y apelantes, *v.* ELSIE ABBOTT COLÓN y SEBASTIÁN COLÓN, demandados y apelados.

Núm. 10864.

*Sometido:* 2 de noviembre de 1953. *Resuelto:* 30 de noviembre de 1954.

*Bolívar Pagán,* abogado de los apelantes; *Arturo Ortiz Toro* y *Manuel Abréu Castillo,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

El 10 de junio de 1949 Apolinar de Jesús entabló pleito de filiación ante el anterior tribunal de distrito contra Elsie Abbott Colón y Sebastián Colón. El demandante alegaba lo siguiente: Nació en Arecibo el 14 de abril de 1910. Era hijo natural de Matilde de Jesús y Carmelo J. Colón porque (1) su madre y Colón vivían en concubinato al tiempo del embarazo y a su nacimiento, (2) Colón lo reconoció como tal hijo en un escrito indubitado, y (3) Colón siempre lo tuvo, pública y privadamente, por hijo suyo y se ocupaba de su educación y sostenimiento. En los momentos de la concepción y del nacimiento del demandante, Matilde y Colón eran solteros y podían contraer matrimonio. Colón falleció el 21 de mayo de 1949 sin otorgar testamento. Entre otros bienes, dejó inmuebles que se describen en la demanda, valorados en más de $400,000. Cuando Colón falleció, era casado con la demandada, Elsie Abbott Colón. Esta última y el demandado Sebastián Colón, el único hijo legítimo de Colón y de Elsie Abbott, en unión al demandante, son los únicos y universales herederos de Colón. El demandante solicitaba que se le declarase hijo natural reconocido de Colón, con la participación correspondiente en todos los bienes dejados por éste.

La contestación a la demanda alegaba sustancialmente lo siguiente: Colón no era el padre del demandante y que todos los otros hechos aducidos en la demanda referentes al alegado reconocimiento del demandante como hijo suyo, nunca ocurrieron. Colón era soltero durante el embarazo de la madre y a la fecha del nacimiento del demandante. Pero Matilde de Jesús, madre del demandante, no podía casarse en aquella época por haberse casado el 23 de enero de 1902 con Pablo Marrero y dicho matrimonio no había sido anulado ni disuelto, y vivían como marido y mujer cuando se concibió al demandante y al momento de su nacimiento. El demandante fué inscrito como hijo legítimo de Pablo Marrero y de Matilde. Se admite

que Colón murió sin otorgar testamento el 21 de mayo de 1949, pero que no eran de su propiedad todos los bienes inmuebles descritos en la demanda. Sólo era dueño de los bienes inmuebles descritos en la contestación, valorados en menos de $80,651.72. Se admite también que a la muerte de Colón, éste dejó como herederos suyos a los dos demandados, su viuda Elsie Abbott Colón y su hijo legítimo Sebastián Colón.

La contestación también alega que después de haberse casado en 1902 Pablo Marrero y Matilde, madre del demandante, éstos vivieron como marido y mujer hasta después de haber cumplido Matilde 21 años de edad, habiendo ambos cónyuges ratificado el matrimonio; que el demandante nació como hijo de Pablo Marrero y de Matilde mientras éstos vivían juntos como marido y mujer y fué inscrito como hijo legítimo de aquéllos; que el demandante nació después de transcurridos 180 días de la celebración del matrimonio y no existía imposibilidad física del marido para tener relaciones maritales con su esposa dentro de los primeros 120 días de los 300 que precedieron al nacimiento del menor; que el demandante siempre ha usado el apellido de Marrero y no el de Colón; y que cuando se inscribió en el servicio selectivo, cuando se casó en 1932, y cuando inscribió ocho hijos habidos en su matrimonio, siempre usó el apellido paterno de Marrero y está impedido de negar que su apellido paterno es el de Marrero.

La contestación también aducía como defensas especiales (1) que el demandante no tiene "personalidad jurídica" para impugnar el matrimonio de su madre con Pablo Marrero, (2) que no se puede admitir evidencia alguna a fin de cuestionar la legitimidad del demandante como hijo legítimo de Pablo Marrero, con excepción de lo que provee el art. 113 del Código Civil, y (3) que la causa de acción ha prescrito.

El 24 de junio de 1952, previa autorización del tribunal sentenciador, el demandante radicó una demanda enmendada. Por vez primera se acumuló a Matilde de Jesús como parte demandante junto a Apolinar de Jesús. La nueva demanda

omitió la alegación que aparecía en la demanda original al efecto de que Colón había reconocido a Apolinar como hijo natural suyo en un escrito indubitado. Alegaba que cuando nació Apolinar, Colón y Matilde eran solteros y podían casarse. Alegaba además que el matrimonio de Pablo Marrero y de Matilde era nulo *ab initio* porque (1) Matilde no tenía la edad legal necesaria para poder contraer matrimonio y para el mismo no hubo consentimiento de sus padres, y porque (2) dicho matrimonio fué contraído mediante violencia, intimidación y amenaza de peligros graves de parte de Pablo Marrero contra Matilde. Solicitan los demandantes que el tribunal sentenciador resuelva (1) que el matrimonio entre Pablo Marrero y Matilde era nulo, (2) que Apolinar es hijo natural reconocido de Colón, y (3) que se otorgue a Apolinar la correspondiente participación en los bienes dejados por Colón.

Los demandados solicitaron la desestimación de la demanda enmendada por el fundamento de que no alegaba hechos constitutivos de causa de acción. El tribunal sentenciador dictó sentencia declarando con lugar la moción y desestimando la demanda. En apelación, los demandantes sostienen que el tribunal sentenciador cometió error (1) al resolver, al considerar la moción de los demandados para que se desestimara la demanda por falta de hechos constitutivos de causa de acción, que Matilde no podía acumularse como parte demandante en el pleito de filiación, (2) al resolver que la acción de nulidad del matrimonio entre Pablo Marrero y Matilde estaba prescrita, (3) al pasar, a base de hechos sin prueba alguna ni alegaciones, sobre la validez del matrimonio entre Pablo Marrero y Matilde, y (4) al desestimar la demanda sin conceder a los demandantes oportunidad para enmendarla nuevamente.

Este caso sugiere un caudal de potenciales cuestiones de derecho sustantivo y procesal. Haremos caso omiso de ellas por considerar innecesaria su resolución, en vista de las alegaciones de la demanda enmendada y del estado del caso

según éste ha venido a nosotros. De haber prescrito la acción de filiación de Apolinar, a ningún fin práctico conduciría una opinión sobre todas las otras cuestiones suscitadas por la opinión y sentencia del tribunal sentenciador y por los errores señalados por los demandantes. Por consiguiente, pasamos ahora a discutir la cuestión de prescripción.

 Apolinar nació en 1910. Su *status* en cuanto a filiación se rige por consiguiente por las disposiciones pertinentes del Código Civil de 1902, que estuvieron en vigor hasta 1911. Bajo él Código de 1902, desde el punto de vista del derecho sustantivo, no se hacía distinción alguna entre un hijo adulterino y un hijo natural: ambos eran tenidos como hijos ilegítimos. *Torres* v. *Sucn. Cautiño*, 70 D.P.R. 646, 649; *Fuentes* v. *Tribl. de Distrito*, 73 D.P.R. 959, 974. Por consiguiente, como cuestión de derecho sustantivo, los demandados no podían defenderse de la actual reclamación de Apolinar sobre filiación por el *único* fundamento de la validez del matrimonio entre Pablo Marrero y Matilde, siempre y cuando, desde luego, que Apolinar pudiera demostrar que en su caso se cumplieron los requisitos para su filiación.[1] En otras palabras, a fin de dejar establecido su *status* como hijo natural de Colón, no es necesario obtener sentencia de nulidad del matrimonio de su madre, como tal. De esto surge que, a los fines de este pleito de filiación, es inmaterial la alegada validez o nulidad del matrimonio entre Pablo Marrero y Matilde. De igual forma, es innecesario determinar en este caso si el pleito de nulidad fué correctamente acumulado con el pleito de filiación o quiénes eran las partes necesarias en aquél.

---

[1] Cuando es la madre del menor la que comete el adulterio, surgen problemas adicionales: la presunción de legitimidad; quién puede instar pleito para impugnarla; la clase de prueba necesaria para destruirla; la prescripción. Véase *Agosto* v. *Javierre*, resuelto el 30 de noviembre de 1954, ante pág. 471, donde la mayoría de este Tribunal resuelve que puede instarse pleito de filiación por un demandante que alega que es hijo natural del demandado aun cuando su madre estuviera casada con otro hombre en el momento crucial, no empece el art. 116 del Código Civil. Véanse también los arts. 113 y 117 del Código Civil. *Cf. Chabrán* v. *Méndez*, 74 D.P.R. 768.

 No obstante el hecho de que bajo el Código de 1902 no existía diferencia alguna entre un hijo adulterino y un hijo natural y de que ambos tenían los mismos derechos que los hijos ilegítimos como cuestión de derecho sustantivo, sí existe diferencia entre ambos, a los fines de la prescripción en un pleito instado ahora, para hijos nacidos bajo el Código de 1902. En consecuencia, sobre la cuestión de prescripción existen dos posibilidades en este caso: (1) el demandante era un supuesto hijo natural bajo la teoría de que el matrimonio de Pablo y Matilde en 1902 era nulo; (2) el demandante era un supuesto hijo adulterino bajo la teoría de que dicho matrimonio era válido.(²) Si el demandante era hijo natural más bien que adulterino porque el matrimonio de 1902 era nulo, el término prescriptivo que rige su caso es el del art. 126 del Código Civil, que dispone que debe ejercitar su acción dentro de un año después de la muerte de su padre putativo. *Fuentes* v. *Tribl. de Distrito*, supra 974. Toda vez que Colón falleció el 21 de mayo de 1949, a primera vista parecería que la demanda se radicó en tiempo. Pero con el propósito de establecer que era hijo natural, el demandante venía obligado a demostrar que sus padres podían casarse en el momento crucial. Esto a su vez lo compele a atacar la validez del matrimonio de Matilde y Pablo. Es innecesario determinar varias cuestiones, tales como si el demandante tiene la capacidad para atacar el matrimonio en esta forma, véase el art. 111 del Código Civil, y si un ataque con éxito al matrimonio sería suficiente por sí para destruir la legitimidad del demandante. Véanse los escolios 1 y 2. Suponemos, sin decidirlo, que todos estos problemas se resolverían a favor de Apolinar. Lo que sí es importante, a nuestros fines, es que, para poder establecer que él era un hijo natural más bien que adulterino, era necesario que Apolinar incluyera como

---

(²) Es innecesario discutir (1) si el matrimonio de 1902 sólo era anulable en vez de nulo, o (2) si el demandante es presuntivamente legítimo, aun cuando fuere posible en momento tan tardío anular el matrimonio de Pablo y Matilde. *Cf. Cintrón* v. *Román*, 36 D.P.R. 484; *Miranda* v. *Cacho*, 66 D.P.R. 550, y opinión disidente en el último a la pág. 558.

partes indispensables tanto a su madre como al esposo de ella, Pablo Marrero. Apolinar incluyó a su madre como demandante en el caso. (³) Nunca incluyó a su padre o a los herederos de éste como partes en el caso. (⁴) Además, aun cuando la madre fuera la única otra parte indispensable y aun cuando fuera procedente incluir a ésta como parte demandante más bien que como demandada, se calcula el término prescriptivo bajo dichas circunstancias desde la fecha en que la madre, como parte indispensable, fué por primera vez incluída como parte. *Bithorn* v. *Santana*, 68 D.P.R. 300, 305; *Fuentes* v. *Tribl. de Distrito*, supra, 987–8. La demanda enmendada que incluyó a la madre como parte por primera vez fué radicada en 1952. Esto ocurrió más de un año después del fallecimiento del padre putativo en 1949. Por tanto vemos que, tratando al demandante como supuesto hijo ntaural de Colón, su reclamación estaba impedida por haber transcurrido el término prescriptivo.

Llegamos al mismo resultado si tratamos la reclamación como una en la que el demandante alega que es hijo adulterino que puede no obstante salir victorioso demostrando que, como cuestión de hecho, cumple con los requisitos de hijo natural. Véanse los escolios 1 y 2. Dejando a un lado los problemas en cuanto a legitimidad bajo los arts. 113 y 117 del Código Civil, un hijo adulterino debe instar su pleito dentro de los 15 años después de llegar a su mayor edad. *Torres* v. *Sucn. Cautiño*, 70 D.P.R. 646; *Fuentes* v. *Tribl. de Distrito*, supra, 974; *Cortez* v. *Sucn. Solá*, 72 D.P.R. 627. En este caso el demandante nació en 1910. Por consiguiente debió haber radicado su pleito en 1946. La primera demanda no fué radicada hasta 1949. De esto surge que, tratando al demandante como hijo adulterino, su causa de acción estaba igualmente prescrita.

(³) Dejamos a un lado el problema de si la madre debe ser parte demandada en vez de parte demandante.

(⁴) Si bien no podemos considerarlos en relación con la moción de desestimación ahora ante nosotros, otros documentos en autos aparentemente demuestran que Pablo Marrero falleció en 1923.

La única cuestión que queda por resolver es si la defensa de prescripción estuvo ante el tribunal sentenciador. Como hemos visto, la contestación a la demanda original levantó la prescripción como defensa especial. Pero luego se radicó una demanda enmendada. Y la única alegación en respuesta a la demanda enmendada es la moción de desestimación por no aducir la demanda hechos constitutivos de causa de acción. Alegan los demandados que la cuestión de prescripción fué adecuadamente levantada por la referida moción. Véanse 2 Moore's *Federal Practice,* segunda ed., págs. 2257–58, y casos citados en el escolio 4, pág. 2257–8; *Taylor* v. *Houston and Cave,* 211 F.2d 427, (C.A., D.C.) ; *Berry* v. *Chrysler Corporation,* 150 F.2d 1002 (C.A. 6, 1945). Este Tribunal ha resuelto que cuando una demanda demuestra de su faz que el pleito no se instó en tiempo, la defensa de prescripción puede interponerse mediante moción de desestimación bajo la Regla 12(*b*)(6) de las Reglas de Enjuiciamiento Civil, con o sin affidavits en apoyo de la moción. *Ramos* v. *Pueblo,* 67 D.P.R. 640; *Bithorn* v. *Santana,* supra, 307.([5]) Sin embargo, distinto a los casos de *Ramos* y de *Bithorn,* aquí la moción de desestimación no mencionó específicamente la prescripción. En verdad, como hemos visto, la corte sentenciadora ni siquiera resolvió que el caso de filiación había prescrito. Su único pronunciamiento en cuanto a prescripción fué con referencia a la acción de nulidad, el cual por los motivos ya expuestos no era necesario ni apropiado. Nada hay en autos que indique que al tribunal sentenciador se le llamó expresamente la atención hacia el hecho de que la cuestión de prescripción de la acción de filiación estaba incluída en la moción de desestimación. Bajo estas circunstancias, somos de opinión que procede la devolución del caso al tribunal sentenciador a fin de que Apo-

---

([5]) *Cf. Peña* v. *Eastern Sugar Associates,* 75 D.P.R. 304, donde resolvimos que la defensa de prescripción no podía levantarse por primera vez ante este Tribunal. En el caso de *Peña* la demandada no radicó mociones. Simplemente radicó una contestación a la demanda que no contenía la defensa de prescripción.

linar pueda, por affidavit o en alguna otra forma, demostrar, de serle posible, que el término prescriptivo en cuanto a su acción de filiación fué interrumpido o que, por algún otro motivo, el mismo no es aplicable. Por consiguiente, revocaremos la sentencia del tribunal sentenciador y devolveremos el caso a dichos fines.

*Por los motivos expuestos la sentencia del Tribunal Superior será revocada y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Jues Asociado Sr. Pérez Pimentel concurre en el resultado.