EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* FERNANDO ZAYAS COLÓN, demandado y recurrido.

*Número:* CE-95-118 *Resuelto:* 9 de octubre de 1995

*Carlos Lugo Fiol, Subprocurador General,* y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar,* abogados de El Pueblo; *Norberto Colón,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

En este caso, se recurre de la sentencia dictada por el Tribunal Superior, Sala de Aibonito, el 18 de enero de 1995, mediante la cual dicho foro confirmó un dictamen del Tribunal de Distrito sobre paternidad, pero revocó la imposición retroactiva de la correspondiente pensión alimentaria que el Tribunal de Distrito había fijado.

Tenemos ante nos la oportunidad de pautar la cuestión de cuál es la fecha inicial de pago de los alimentos, cuando la filiación se declara dentro del procedimiento dispuesto por el Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241.

Los hechos se exponen a continuación.

# I

A Fernando Zayas Colón se le imputó una violación del Art. 158 del Código Penal, *supra* (incumplimiento de la obligación alimentaria). Señalado el caso para vista, el acusado compareció y negó la paternidad del menor N.Z.C. En vista de la negativa del acusado, se le ordenó a las partes y al menor hacerse pruebas de sangre (H.L.A.). El resultado de esta prueba fue negativo. El Ministerio Fiscal solicitó entonces que se realizara la prueba D.N.A. por ser más concluyente. El tribunal accedió al pedido y el resultado de esta prueba reveló que el acusado tenía una probabilidad de inclusión en la paternidad del menor de un 99.1%. Celebrada la vista del caso en su fondo, y evaluada la prueba testifical y pericial presentada, el 24 de junio de 1993 el Tribunal de Distrito, Sala de Coamo, concluyó que el acusado era el padre del menor y lo condenó al pago de una pensión alimentaria de $200 mensuales, *retroactivo al 10 de abril de 1992, fecha de presentación de la denuncia.*

Inconforme, el acusado presentó un escrito de apelación ante el Tribunal Superior, Sala de Aibonito. Dicho foro confirmó la determinación de paternidad hecha por el tribunal de instancia, pero la modificó en cuanto al aspecto de la retroactividad del pago de la pensión alimentaria. Dispuso que el pago de la pensión procedía a partir de la fecha cuando se hizo la determinación judicial de paternidad. Adujo dicho foro que "es norma de nuestro sistema que sin la determinación de paternidad no procede la fijación de pensión alimenticia [sic]".

Inconforme con lo resuelto, el Ministerio Público presentó ante nos un recurso de *certiorari*. Alegó como único error lo siguiente:

> Erró el Tribunal Superior, Sala de Aibonito, al modificar la Sentencia dictada por el Tribunal de Distrito, Sala de Coamo, en cuanto a la fecha de retroactividad del pago de la pensión alimenticia [sic] y disponer que dicho pago era efectivo a la fecha en que se hizo la determinación de paternidad contra el

acusado-recurrido. A base de lo dispuesto en el Artículo 147 del Código Civil, el pago de la pensión alimenticia [sic] del menor [N.Z.C.] debe retrotraerse a la radicación de la denuncia bajo el Artículo 158 del Código Penal, fecha en que se entienden reclamados judicialmente los alimentos.

El 21 de abril de 1995 le concedimos un término a la parte recurrida para mostrar causa por la cual no debíamos expedir el auto solicitado y dictar sentencia modificatoria de la del Tribunal Superior y reinstalar, en su totalidad, la del Tribunal de Distrito.

La parte recurrida compareció finalmente el 14 de junio de 1995. Indicó, en esencia, que no interesaba mostrar causa.[1]

Procede que resolvamos según intimado.

## II

■ Como se sabe, en Puerto Rico, además del procedimiento civil ordinario de acción filiatoria, nuestro ordenamiento jurídico permite que la paternidad de un menor sea adjudicada dentro del procedimiento por incumplimiento de la obligación alimentaria que provee el Art. 158 del Código Penal, *supra*.[2] *Robles v. Otero de Ramos*, 127 D.P.R. 911 (1991).

---

[1] La parte recurrida se limitó a señalar que estaba pagando la pensión y que no le interesaba presentar un escrito de oposición. No se ha allanado, pues, a la cuestión ante nos, que es la de si tiene que pagar alimentos por el período de 10 de abril de 1992 (cuando se presentó la denuncia) al 24 de junio de 1993, cuando se decretó la paternidad.

[2] Recientemente, mediante la Ley Núm. 86 de 17 de agosto de 1994, se enmendó la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 501 *et seq.*, para autorizar, *inter alia*, un nuevo procedimiento *administrativo* en el cual se pueda dilucidar la paternidad de un menor. Se trata de una alternativa distinta a la tradicional acción civil, y distinta también de la acción que establece el Código Penal.

Conforme a la enmienda referida, el Administrador de la recién creada Administración para el Sustento de Menores, puede hacer determinaciones de paternidad en casos administrativos en los cuales exista controversia sobre la filiación, sujeto a una eventual revisión judicial. 8 L.P.R.A. sec. 510. También se le da esa autoridad a un funcionario de la Administración denominado "juez administrativo". 8 L.P.R.A. sec. 506b.

No hemos tenido ocasión de pasar juicio sobre esta nueva vía para adjudicar las controversias de paternidad.

 Hace unos años, reconocimos que la referida acción filiatoria provista en el Código Penal había sufrido una transformación radical, conforme a lo dispuesto en la Ley Núm. 10 de 16 de mayo de 1966 (33 L.P.R.A. sec. 991 n.). Antes de existir esa legislación, la acción filiatoria en cuestión era de carácter *exclusivamente penal.* Pero, a partir de la Ley Núm. 10, *supra,* el Art. 158 del Código Penal, *supra,* se convirtió en un precepto de carácter *mixto.* En *Pol Sella v. Lugo Christian,* 107 D.P.R. 540 (1978), así lo reconocimos expresamente, al señalar que dicho artículo incluye en su inciso (a) una prohibición, de naturaleza penal, del incumplimiento con la obligación alimentaria, y en los incisos (b) a (h) un procedimiento de filiación, de naturaleza civil.

La anterior caracterización del Art. 158 del Código Penal, *supra,* es muy pertinente a la controversia del caso de autos. Tenemos ante nos dos interpretaciones judiciales conflictivas sobre la fecha a partir de la cual debe pagarse la pensión. El problema surge porque el estatuto penal bajo el cual se adjudicó este caso en instancia, nada provee respecto a cuándo deben abonarse los alimentos en cuestión, ni nosotros nos hemos expresado con anterioridad directamente sobre el particular. Como existe esa laguna, en vista del carácter mixto del Art. 158 del Código Penal, *supra,* y de que el procedimiento de filiación, que éste establece, equivale a la tradicional acción civil filiatoria, procede que interpretemos dicha disposición, en conjunto con el Art. 147 del Código Civil, 31 L.P.R.A. sec. 566, para determinar cuál es la fecha cuando comienza la obligación de abonar alimentos en casos como el de marras.

## III

 El Art. 147 del Código Civil, *supra,* dispone, en lo pertinente, que:

La obligación de dar alimentos será exigible desde que los

necesitare para subsistir la persona que tuviere derecho a percibirlos; *pero no se abonarán sino desde la fecha en que se interponga la demanda.* (Énfasis suplido.)

La referida disposición de nuestro Código Civil concuerda con el Art. 148 del Código español, del cual proviene. Sobre dicho artículo, el comentarista Puig Brutau ha señalado que parece contradictorio que se disponga, por un lado, que la obligación de dar alimentos es exigible *desde que el alimentista los necesite,* a la vez que se dispone, por otro lado, que los alimentos *no tienen que abonarse sino desde la fecha cuando se interponga la demanda para reclamar los alimentos.*[3] J.M. Manresa y Navarro, en su obra *Comentarios al Código Civil Español,* Madrid, Ed. Reus, 1956, T. I, pág. 684, explica la aparente contradicción, al señalar que la ley española de matrimonio civil había establecido que la obligación de dar alimentos sería exigible desde que el alimentista los necesitase para subsistir, pero no había dispuesto nada respecto a aquellas situaciones en las cuales el titular de los alimentos no los había reclamado durante mucho tiempo, a pesar de necesitarlos. ¿Serían debidos los alimentos, aun en tal situación? La jurisprudencia española vino a resolver esta cuestión a base de suponer que, visto el carácter imperioso de los alimentos, no existía su necesidad mientras no se reclamasen judicialmente, posición que se incorporó luego al Código Civil español. Véase *Miranda v. Cacho,* 67 D.P.R. 515, 517 (1947).

■ Conforme con lo dispuesto por el artículo en cuestión, pues, el momento determinante del pago de los alimentos es la fecha de su reclamación. Los alimentos se abonarán a partir del momento cuando se exijan judicialmente. Así lo hemos resuelto antes. En *Miranda v. Cacho,* supra, denegamos retrotraer el pago de los alimen-

---

[3] J. Puig Brutau, *Fundamentos de Derecho Civil,* 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, pág. 288.

tos de una menor a la fecha de la demanda de filiación porque, en dicha demanda, no se reclamó alimentos, al haberse limitado la acción a solicitar únicamente que se reconociera a la menor como hija natural del demandado. En cambio, en *De Jesús v. Castellar*, 80 D.P.R. 241 (1958), resolvimos que el pago de los alimentos de una menor era retroactivo a la fecha de la interposición de la demanda de *filiación*, ya que en ésta se habían reclamado dichos alimentos. En esa opinión determinamos, en lenguaje claro y tajante, que "aunque en la propia sentencia de alimentos se establezca por vez primera la paternidad, los alimentos se abonarán, conforme lo dispone el Art. 147 del Código Civil, desde la fecha de la ... interposición de la demanda". Íd., pág. 245.

■ Surge con claridad, de lo señalado antes, que lo decisivo en cuanto al pago de alimentos es la fecha cuando éstos se reclamen. Este principio medular está recogido también en la política pública de Puerto Rico sobre el sustento de menores. El Art. 7 de la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 518, dispone expresamente que los pagos por pensiones alimentarias serán efectivos *desde la fecha cuando se presentó la petición de alimentos.*

■ Por todo lo anterior, como la acción bajo el Art. 158 del Código Penal, *supra*, implica necesariamente una reclamación judicial de alimentos, resolvemos que, en casos en los cuales la paternidad de un menor se establece mediante el procedimiento establecido por dicho artículo, los alimentos deben abonarse *desde la fecha cuando se presentó la denuncia correspondiente*, como correctamente determinó el Tribunal de Distrito en este caso.

■ Al resolver de este modo, seguimos el claro mandato del Art. 18 del Código Civil, 31 L.P.R.A. sec. 18, que dispone que:

> Las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro[;]

al igual que nuestros propios precedentes sobre leyes referentes al mismo asunto. *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989); *United Hotels of P.R. v. Willig*, 89 D.P.R. 188 (1963). Como dijimos recientemente en *J.R.T. v. A.E.E.*, 133 D.P.R. 1, 9–10 (1993):

> En buena hermenéutica jurídica, disposiciones de distintas leyes que tengan que ver con la misma materia o que se complementen "deben ser interpretadas las unas con las otras, para cuando lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". ... Las leyes las debemos interpretar y aplicar sin desvincularlas del problema cuya solución persiguen, como "parte de un todo coherente y armonioso — el ordenamiento jurídico".

En el caso de autos, siguiendo las normas mencionadas sobre leyes referentes al mismo asunto, interpretamos las disposiciones de naturaleza civil del Art. 158 del Código Penal, *supra*, junto con lo preceptuado en el Art. 147 del Código Civil, *supra*, y con lo ordenado por la Ley Orgánica de la Administración para el Sustento de Menores.

■ Al resolver de este modo, además, reiteramos el alto interés público que existe de que se cumpla cabalmente la obligación que tienen los padres de alimentar a sus hijos. *Valencia, Ex parte*, 116 D.P.R. 909 (1986). Este interés se hace viable mediante el procedimiento sumario que establece el Art. 158 del Código Penal, *supra,* que le provee al menor un remedio rápido y sencillo para obtener de su padre el sustento que necesita. *Charana v. Pueblo*, 109 D.P.R. 641 (1980). Resolver de otro modo desvirtuaría la eficacia especial de este remedio.

## III

■ En virtud de lo que resolvemos en este caso, dejamos sin efecto las expresiones normativas formuladas en casos como *Rosaly v. Rullán*, 86 D.P.R. 788 (1962); *Pueblo v. Rodríguez*, 67 D.P.R. 735 (1947), y *Miranda v. Cacho*, 66 D.P.R. 550 (1946), en cuanto indican, contrario a lo que hoy resolvemos, que el menor tiene derecho a alimentos sólo desde la fecha cuando quedó establecida su paternidad judicialmente.[4] Se trata de casos relativamente antigüos, resueltos antes de estar en vigor el régimen constitucional o estatutario vigente relativo al derecho de filiación. Éstos sólo pueden dar lugar a confusiones o a conflictos, como el sucedido entre el Tribunal de Distrito y el Tribunal Superior en este caso.

## IV

Por los fundamentos antes expuestos, *se expedirá el auto solicitado y se dictará sentencia para modificar la del Tribunal Superior, Sala de Aibonito, de 18 de enero de 1995, conforme con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López concurrió con una opinión escrita, a la cual se unió el Juez Asociado Señor Hernández Denton.

---

[4] Nos referimos a expresiones judiciales como las siguientes:

(1) "El derecho de un hijo natural a exigir alimentos de su padre tan pronto queda establecido el hecho de la paternidad", en *Rosaly v. Rullán*, 86 D.P.R. 188, 189 (1962);

(2) "Tanto en casos criminales como en casos civiles este Tribunal reiteradamente ha decidido que una vez establecida la paternidad, el presunto padre viene obligado a proveer alimentos a su menor hijo", en *Pueblo v. Rodríguez*, 67 D.P.R. 735, 738 (1947), y

(3) "Habiendo declarado la corte a quo que la niña era hija del demandado ... y como tal, con derecho a alimentos", en *Miranda v. Cacho*, 66 D.P.R. 550, 555 (1946).

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Hernández Denton.

Aun cuando estamos conscientes de que la posición que sostenemos *no* cambia el resultado al que se llega en el presente caso, nos vemos en la obligación de suscribir una ponencia concurrente. Ello, llana y sencillamente, debido al hecho de que somos del criterio que el razonamiento que aduce el Tribunal en apoyo de dicho resultado es uno que *no* es correcto desde un punto de vista estrictamente jurídico.

I

Un breve análisis de la opinión mayoritaria emitida revela que el razonamiento que le sirve de base a la referida norma es uno sorprendentemente parco y sencillo, *a saber*: razona el Tribunal que, estableciendo el Código Civil de Puerto Rico, en su Art. 147,[1] que los alimentos "se abonarán ... desde la fecha en que se interponga la demanda" en reclamación de los mismos, y, considerando la denuncia, que se radica imputando una violación al Art. 158 del Código Penal de Puerto Rico,[2] como una "demanda", entiende el Tribunal que resulta forzosa la conclusión de que, en esta clase de situaciones, los alimentos deben abonarse desde la fecha en que se radicó la denuncia ante el foro judicial; todo ello, según la mayoría, conforme lo dispuesto por el Art. 18 del mencionado Código Civil, 31 L.P.R.A. sec. 18.[3]

---

[1] 31 L.P.R.A. sec. 566.

[2] 33 L.P.R.A. sec. 4241.

[3] Es de notar que, aun cuando el Tribunal así no lo hace constar expresamente en la opinión que emite, este razonamiento resulta ser igualmente aplicable a la situación en que se reclama el reconocimiento como hijo por medio de una demanda

Dicho razonamiento, repetimos, es uno erróneo en derecho. Veamos por qué.

## II

El citado Art. 147 del referido Código Civil establece, en lo pertinente, que:

> La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona *que tuviere derecho* a percibirlos; pero no se abonarán sino desde la fecha en que se interponga la demanda. (Énfasis suplido.)

Dicho artículo de ley está inmerso en el Libro I, Título VII, del Código Civil, relativo el mismo a "quién debe alimentar y hasta qué extremo" y/o al de "alimentos entre parientes". El mismo claramente establece, *en términos generales*, la fecha, o momento, desde la cual el foro judicial puede concederle alimentos a la persona, o parientes, que tienen o *"tuviere [el] derecho [jurídico] a percibirlos"*, *esto es, desde un punto de vista legal.* Aun cuando el citado Art. 147 no lo dice expresamente, *el mismo nos refiere —por necesidad— a las disposiciones del Art. 143 del Código Civil, 31 L.P.R.A. sec. 562*; esto es, al artículo del mencionado Código que establece "quiénes están obligados a suministrarse alimentos".([4])

---

civil ordinaria de filiación en la cual se solicita alimentos; siendo, por consiguiente, obligatorio el mismo resultado en dicha situación.

([4]) Establece el mencionado Art. 143, del Código Civil, 31 L.P.R.A. sec. 562, que:

"Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la sec. 561 de este título:

"1) Los cónyuges.

"2) Los ascendientes y descendientes.

"3) El adoptante y el adoptado y sus descendientes.

"Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguíneos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio."

En otras palabras, la correcta aplicación de las disposiciones del Art. 147, *supra, presupone, o parte de la premisa, de que el reclamante de los alimentos ya goza de la condición, o el derecho jurídico, que le faculta para reclamar los mismos.* Dicho de otra forma, el Art. 147, *supra,* establece que los alimentos se le abonarán, desde la fecha en que interpongan la demanda, a aquellos —hijos, cónyuges, padres, etc.— *que gozan de la condición jurídica preexistente como tales hijos, cónyuges, padres, etc.*

Forzosa resulta ser la conclusión, en consecuencia, a los efectos de que el *razonamiento* que utiliza el Tribunal en apoyo del resultado a que llega en el presente caso es uno que es erróneo desde un punto de vista estrictamente jurídico. Ello así por cuanto, a la fecha de la radicación de una denuncia por violación al Art. 158 del Código Penal, *supra, en la cual se reclama reconocimiento como hijo,* dicho reclamante *no* goza en esos momentos de la *condición jurídica* de hijo del demandado.

## III

Ahora bien, lo antes expuesto *no* significa que una determinación judicial final y firme —a los efectos de que un demandante o reclamante es hijo de un demandado o de determinada persona— no pueda tener, *por lógica necesidad,* efectos retroactivos en ciertas y determinadas situaciones.

El ejemplo que ilustra, con mayor claridad, lo antes expresado lo es la situación, o acción, mediante la cual un demandante reclama ser hijo de determinada persona y la determinación judicial, favorable a esos efectos, recae con posterioridad a la ocurrencia de la muerte del demandado, padre del demandante reclamante.

En esta situación, dicha determinación judicial se "retrotrae", *por imperativo jurídico,* a la fecha de la muerte del padre, teniendo ello la consecuencia de concederle al

hijo demandante participación en la herencia de su progenitor. Determinar lo contrario, *en esa situación fáctica,* constituiría un absurdo jurídico.

*Y es que ello no puede ser de otra manera.* Así lo reconocen los comentaristas. Meramente, a manera de ejemplo, citamos:

Aclarado en qué consiste la determinación de la filiación, puntualizada su verdadera dimensión y señalado que su finalidad es identificar oficialmente al progenitor o progenitores, *interesa ahora destacar esa finalidad para que pueda comprenderse sin mayor esfuerzo una distinción que no siempre se percibe con la claridad que fuera de desear y que hay que dejar desde este momento perfectamente deslindada: Una cosa es la prueba de la filiación a efectos de determinarla y otra la prueba de una filiación ya determinada. Puesto que para hacer valer cualquier derecho fundado en la filiación es necesario que previamente se haya determinado mediante la identificación oficial de los progenitores, es menester, asimismo, demostrar que esa identificación ha tenido lugar o, lo que es lo mismo, que la filiación ha sido determinada.* Esta doble exigencia se plantea tanto si se trata de acreditar en el tráfico que una persona es hijo de otra, como si alguien (empezando por el propio hijo) ejercita judicialmente una pretensión procesal o se opone a la ejercitada, alegándose tanto en un caso como en otro un derecho *que descansa precisamente* en el hecho de que el actor o el demandado, es hijo de un progenitor concreto y determinado. *Esta doble exigencia lógica concurre no sólo si se trata de ejercitar un derecho inherente al status familiae o al status filiae,* sino también si el derecho afirmado o discutido no está integrado en la relación jurídica de filiación. *Lo primero acontece si el hijo, por ejemplo, plantea una reclamación alimenticia contra su padre, o si solicita ser declarado heredero intestado del mismo o, en fin, si impugna por inoficiosa una donación que, a su juicio, perjudica la legítima que le corresponde.* Imaginemos, en cambio, para captar el segundo tipo de supuestos, que el hijo (o el que se dice hijo) pretende cobrar una pensión de la seguridad social, o defiende la validez de la cesión de una vivienda arrendada y que se ha realizado conforme al artículo 24, 1, de la Ley de Arrendamientos Urbanos, o la subrogación en los derechos y obligaciones dimanantes de un contrato de inquilinato, o, por último, si ejercita un derecho hereditario conferido en testamento a favor del hijo o hijos que tenga determina persona, sin que en el testamento los designe *nominatim,* a pesar de lo cual la disposición es válida a tenor del artículo 772, 2, del C.c. *En*

*todas esas hipótesis, y en muchas más que pueden presentarse,*
*es necesario justificar la filiación, y más concretamente, que la*
*filiación ha sido determinada.*[5] (Escolio omitido y énfasis suplido y en el original.)

Igual "sucede" con la situación hoy ante nuestra consideración. *No* albergamos duda alguna de que el foro judicial, *una vez emitido un dictamen judicial favorable al hijo demandante sobre su "status" de hijo del demandado*, tiene *facultad en ley* para disponer que este hijo demandante tiene derecho, *previa demostración de necesidad*, a recibir alimentos en forma retroactiva desde la fecha en que presenta la demanda o denuncia; sobre todo, cuando consideramos la reiterada, y trillada, doctrina de este Tribunal a los efectos de que los casos de alimentos de menores están revestidos del más alto interés público. *Valencia, Ex parte*, 116 D.P.R. 909 (1986).

En resumen, aun cuando *concurrimos* con el resultado a que llega el Tribunal en el presente caso —a los efectos de que el tribunal de instancia tenía autoridad legal para imponerle al demandado la obligación de pasar alimentos al hijo "demandante" desde la fecha de la radicación de la denuncia por violación al Art. 158 del Código Penal, *supra— rechazamos* que ello así resulte procedente a base de la aplicación de las disposiciones del Art. 147 del Código Civil, *supra*, a los hechos del presente caso; ello por razón, repetimos, que la aplicación del citado Art. 147 presupone, o parte de la premisa, de que el hijo demandante ya goza de la condición jurídica de hijo del padre demandado.

Por último, y en cuanto al argumento que se expone en la opinión mayoritaria —a los efectos de que este Tribunal anteriormente ha emitido decisiones en que ha (mal) "utilizado" el citado Art. 147 en esta clase de situaciones— meramente deseamos señalar que el hecho de que el Tri-

---

[5] M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. III, Vol. 1, pág. 122.

bunal se haya equivocado en el pasado *no* hace correcta en derecho la decisión que hoy emite.