José M. García Gómez y otros, demandantes y recurridos, *v.* Colegio de Arquitectos de Puerto Rico y otros, demandados y recurrentes.

*Número:* CC-96-50          *Resuelto:* 3 de marzo de 1998

*Lino J. Saldaña,* abogado de la parte peticionaria; *Hiram Martínez López,* abogado de la parte recurrida; *Gilberto Oliver Vázquez,* abogado del Colegio de Ingenieros y Agrimensores de Puerto Rico, en calidad de *amicus curiae.*

## SENTENCIA

Se relatan a continuación los hechos esenciales del caso de autos.

La Junta de Gobierno del Colegio de Arquitectos de Puerto Rico suspendió a José M. García Gómez como miembro de ese colegio por un período de tres años, por haber incurrido alegadamente en una violación a los cánones de ética profesional que rigen la conducta de los arquitectos.

García Gómez impugnó la suspensión aludida ante el Tribunal de Primera Instancia, Sala de San Juan. Este foro ordenó la restitución de García Gómez como colegiado al resolver que el Colegio de Arquitectos de Puerto Rico no posee la facultad en ley para suspender a uno de sus miembros del ejercicio de la profesión sin la ratificación de tal suspensión por la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico.

El Tribunal de Circuito de Apelaciones confirmó el dic-

tamen de instancia y el Colegio de Arquitectos solicitó la revisión de esa decisión mediante un recurso de *certiorari* presentado ante nos.

Luego de estudiar y analizar el caso, los jueces votaron y el Tribunal quedó *igualmente dividido*. De los jueces que participaron, la votación fue la siguiente: los Jueces Asociados Señores Rebollo López, Hernández Denton y Corrada Del Río confirmarían el dictamen recurrido; los Jueces Asociados Señores Negrón García y Fuster Berlingeri y la Juez Asociada Señora Naveira de Rodón revocarían la determinación del foro apelativo y del foro de instancia. El Juez Presidente Señor Andréu García no intervino.

Para que este Tribunal pueda revocar una sentencia se requiere una mayoría de los jueces que participan en el caso. Regla 5(b) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A. Si hay empate se confirma la sentencia recurrida. *P.I.P v. E.L.A.*, 109 D.P.R. 685, 687 (1980); *Junta Insular de Elecciones v. Corte*, 63 D.P.R. 819, 833 (1944).

Por la razón anterior, visto el empate que existe en la votación de los Jueces en el caso de autos, *se dicta la sentencia para confirmar la del foro apelativo de 24 de enero de 1996.*

Lo pronuncia, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente, a la cual se unieron los Jueces Asociados Señores Rebollo López y Corrada Del Río. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón. El Juez Presidente Señor Andréu García no intervino.

(*Fdo.*) Carmen E. Cruz Rivera
*Subsecretaria del Tribunal Supremo*

— O —

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unen los Jueces Asociados Señores Rebollo López y Corrada Del Río.

Por entender que la autoridad para suspender a un arquitecto del ejercicio de su profesión corresponde exclusivamente a la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores concurrimos con la sentencia emitida por este Tribunal en la que se confirma el dictamen emitido por el Tribunal de Circuito de Apelaciones.

## I

El arquitecto José M. García Gómez y su esposa presentaron una demanda ante el Tribunal de Primera Instancia contra el Colegio de Arquitectos de Puerto Rico (en adelante el Colegio), mediante la solicitud de un *injunction* preliminar para pedir una indemnización por daños y perjuicios.

Alegaron que la Junta de Gobierno del Colegio suspendió como colegiado al arquitecto García Gómez por un período de tres (3) años al determinar que había incurrido en violaciones a los cánones de ética profesional y que el efecto de esta suspensión fue privarlo del ejercicio de su profesión sin que mediara una determinación de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores (en adelante la Junta Examinadora). Fundamentaron su alegación en la Sec. 3 de la Ley Orgánica del Colegio de Arquitectos, 20 L.P.R.A. sec. 753, la cual establece que ninguna persona que no sea miembro del Colegio podrá practicar dicha profesión en Puerto Rico. Ley Núm. 96 de 6 de julio de 1978 (20 L.P.R.A. sec. 751 *et seq.*). Ante esta alegación, el Colegio sostuvo que tiene la facultad de suspender a uno de sus miembros por violación a los cánones de ética profesional sin la intervención de la Junta Examinadora, a tenor de la Sec. 2(h) de la Ley Núm. 96, *supra,* 20 L.P.R.A.

sec. 752(h), la cual lo autoriza a imponer las sanciones que a su discreción crea convenientes conforme a su reglamento.

El Tribunal Superior, así como el Tribunal de Circuito de Apelaciones, correctamente concluyeron que para poder privar a un arquitecto del ejercicio de su profesión se requiere un procedimiento disciplinario ante la Junta Examinadora, ya que la Ley Orgánica del Colegio de Arquitectos no lo autoriza a suspender por sí solo a uno de sus miembros, con el efecto de impedirle ejercer su profesión.

## II

El esquema legislativo que regula la profesión de arquitecto en Puerto Rico considera la intervención de dos (2) organismos diferentes: el Colegio([1]) y la Junta Examinadora([2]). La Asamblea Legislativa determinó que era conveniente en el ejercicio de un delicado balance de poderes, que *ciertos* aspectos de la reglamentación de la arquitectura en Puerto Rico fueran compartidos entre estas dos (2) entidades. El propósito de la creación de cada uno de estos organismos, al igual que las funciones asignadas a cada uno, es diferente. La Ley Núm. 96, *supra*, que crea el Colegio, establece claramente que es el Estado, en el ejercicio de su poder de razón de estado, el encargado de regular las profesiones y a quien le corresponde establecer las condiciones y los criterios para su ejercicio.([3]) La función de los colegios profesionales es servir de vehículo apropiado para canalizar de forma efectiva los esfuerzos colec-

---

([1]) La Ley Núm. 96 de 6 de julio de 1978 (20 L.P.R.A. sec. 751 *et seq.*) (en adelante la Ley Núm. 96) creó el Colegio de Arquitectos de Puerto Rico como entidad separada del Colegio de Ingenieros y Agrimensores.

([2]) La Ley Núm. 173 de 12 de agosto de 1988 (20 L.P.R.A. sec. 711 *et seq.*) (en adelante la Ley Núm. 173) estableció la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, derogando la ley anterior la cual había sido objeto de múltiples enmiendas.

([3]) Exposición de Motivos de la Ley Núm. 96 (1978 Leyes de Puerto Rico 300, 301).

tivos de las profesiones para beneficio de la comunidad.([4]) La Sec. 9 de la Ley Núm. 96, *supra*, establece las obligaciones y los deberes del Colegio. 20 L.P.R.A. sec. 759. Entre éstas se destaca: salvaguardar los derechos y velar por el cumplimiento de las responsabilidades de sus miembros en todo lo que se refiere al ejercicio de su profesión, y *colaborar* con la Asamblea Legislativa y las agencias de gobierno en lo relativo a la reglamentación del ejercicio de la arquitectura. 20 L.P.R.A. sec. 759(g) y (h).

Por su parte, la Ley Núm. 173 de 12 de agosto de 1988 (20 L.P.R.A. sec. 711 *et seq.*) que crea la Junta Examinadora dispone que el propósito de ésta es expedir, renovar, suspender y cancelar licencias y certificados para el ejercicio de la práctica de las profesiones de ingeniería, arquitectura y agrimensura.([5]) El Art. 16 de la Ley Orgánica de la Junta Examinadora, 20 L.P.R.A. sec. 711n, se ocupa de enumerar las causas que conllevan la revocación o cancelación de la licencia o certificación. Una de ellas es ser encontrado incurso en violaciones a los cánones de ética profesional del Colegio de Ingenieros y Agrimensores o del Colegio de Arquitectos de Puerto Rico, o en violaciones a las leyes al amparo de las cuales fueron creadas dichas instituciones. El Art. 18 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711p, establece el procedimiento a seguirse en casos cuando proceda la denegación, suspensión provisional, revocación permanente o denegación provisional o permanente de una licencia o certificación. Dicho procedimiento garantiza el derecho a una vista y la revisión judicial.

El historial legislativo de la Ley Núm. 173, *supra*, claramente refleja la intención legislativa de que sea la Junta Examinadora la encargada de establecer las cualificaciones académicas de los aspirantes a estas profesiones y de velar por la conducta profesional y ética de ellos. La Junta Examinadora es el instrumento del Estado que garantiza a

---

([4]) Exposición de Motivos de la Ley Núm. 96, *supra*.

([5]) 1988 Leyes de Puerto Rico 859–860.

nuestros ciudadanos que los profesionales en cuestión estén moral y profesionalmente capacitados.[6]

Un análisis integrado de las leyes orgánicas del Colegio y de la Junta Examinadora demuestra que el esquema establecido por el Legislador le otorga a la Junta Examinadora la facultad exclusiva de tomar una determinación cuyo efecto sea privar a un profesional de la capacidad para ejercer su profesión. Al Colegio se le otorga la facultad de promulgar y poner en vigor cánones de ética profesional, los cuales serán aprobados y publicados por la Junta Examinadora. Sec. 2(g) de la Ley Núm. 96, *supra*, 20 L.P.R.A. sec. 752(g). De igual modo se dispone que el Colegio podrá recibir e investigar las quejas que se formulen con respecto a la conducta profesional de sus miembros. El procedimiento que ha de seguirse consta de: remitirlas a la Junta de Gobierno del Colegio, celebrar una vista preliminar con oportunidad de que el querellado sea oído y, de encontrarse causa fundada, el Colegio podrá imponer las sanciones que a su discreción correspondan conforme a su reglamento, *así como instituir el correspondiente procedimiento de cancelación de licencia ante la Junta Examinadora.* Sec. 2(h) de la Ley Núm. 96, *supra.* De esta disposición se desprende la intención legislativa de que, en aquellos casos cuando la sanción impuesta prive al colegiado del ejercicio de su profesión, como lo sería la suspensión de la colegiación, el Colegio inste un proceso de cancelación de licencia ante la Junta Examinadora.

Este requisito de que los colegios profesionales, en aquellos casos que dispongan sobre inactivación, suspensión o expulsión de los respectivos colegios profesionales, acudan a la Junta Examinadora para iniciar un procedimiento de cancelación de licencia se reitera en el Art. 15 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711m, que dispone:

---

[6] Informe de las Comisiones de Gobierno Estatal, de Agricultura y Recursos Naturales y de lo Jurídico del Senado sobre la aprobación del P. del S. 1108 de 19 de mayo de 1988, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria; Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. del S. 1108 de 2 de junio de 1988, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria.

*Los profesionales a los cuales se les haya inactivado, suspendido o expulsado como miembros de sus respectivos colegios profesionales en virtud de las causas y mediante los procedimientos establecidos por dichos colegios se les suspenderá su certificado o licencia, según sea el caso, mediante la certificación de tal hecho por el oficial autorizado del colegio que corresponda ante la Junta.*[7] (Énfasis suplido.)

La misma sección nos aclara que aun en casos de suspensión de colegiación por falta de pago de la cuota anual de colegiación se requiere acudir a la Junta Examinadora para que ésta suspenda la licencia del profesional querellado. Esto se desprende de lo dispuesto para la reactivación de la licencia.

*Cuando luego de decretada la inactivación, suspensión o cancelación [de la licencia o certificado], el correspondiente colegio profesional certifique oficialmente la rehabilitación del profesional de que se trate, conforme a las leyes de colegiación aplicables, la Junta le reactivará inmediatamente su licencia o certificado mediante el procedimiento y pago de derechos que se disponga en el reglamento de la Junta. Si la expulsión o suspensión es por razón de falta de pago de la cuota anual, bastará una certificación oficial del colegio correspondiente, lo que constituirá una determinación de hecho suficiente para que la Junta tome la acción que corresponda sin necesidad de seguir el procedimiento de vista que más adelante se establece para los demás casos.* 20 L.P.R.A. sec. 711m.

La intención de la Asamblea Legislativa es clara con respecto a exigir que los colegios profesionales, una vez han determinado que procede sancionar a sus miembros con una suspensión de la colegiación, acudan a la Junta Examinadora a solicitar la cancelación o suspensión de la licencia. Así consta de las disposiciones de ley antes citadas. Un análisis cronológico de dichas disposiciones también lo confirma.

La Ley Orgánica del Colegio de Arquitectos fue aprobada en 1978. En 1988 el Legislador aprobó la Ley Orgánica de la Junta Examinadora, incorporando las disposicio-

---

[7] No nos corresponde en este momento, por no estar ante nos, pasar juicio sobre si este tipo de procedimiento cumple con los requisitos mínimos del debido proceso de ley.

nes ya examinadas. Es decir, con conocimiento de que la Ley Orgánica del Colegio exige la colegiación compulsoria y, a su vez, lo faculta para oír querellas, iniciar procedimientos disciplinarios e imponer sanciones según lo dispuesto en su reglamento, el Legislador dispuso en el Art. 15 de la ley que crea la Junta Examinadora que el Colegio tramitara, en todo caso, un paso ulterior ante la Junta Examinadora. 20 L.P.R.A. sec. 711m.

## III

A pesar de que el esquema estatutario antes expuesto claramente demuestra que se exige la intervención de la Junta Examinadora en todo caso en que el efecto del tipo de sanción impuesta por el Colegio equivalga a privar a un arquitecto del ejercicio de su profesión, como lo sería la suspensión de su colegiación, pasaremos a analizar el alcance de esta facultad otorgada por la Ley Orgánica del Colegio.

El Colegio argumenta que la ley orgánica que lo crea lo faculta para imponer sanciones con respecto a querellas, y que entre éstas se incluye la suspensión del colegiado. Sostiene, además, que el efecto de la suspensión de la colegiación es privar automáticamente al colegiado de la capacidad de ejercer su profesión, aun en casos cuando no haya mediado determinación de la Junta Examinadora de que procede la revocación de la licencia.

La opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri acoge este planteamiento del Colegio. Para sostener esta interpretación sobre la facultad de sancionar del Colegio, acude en analogía a examinar la facultad disciplinaria que posee el Colegio de Ingenieros y Agrimensores. Interpreta que la capacidad disciplinaria del Colegio de Ingenieros y Agrimensores incluye la facultad para suspender a uno de sus miembros de la colegiación con el consiguiente efecto de quedar privado del ejercicio profesional, sin intervención de la Junta Examinadora. Luego equipara la facultad disciplinaria del

Colegio a la del Colegio de Ingenieros y Agrimensores descansando en lo parecido de ambas profesiones.

La Ley Orgánica del Colegio de Ingenieros y Agrimensores, Ley Núm. 12 de 29 de septiembre de 1980 (20 L.P.R.A. sec. 731 *et seq.*), dispone expresamente en su Art. 2 (20 L.P.R.A. sec. 732) que el Colegio de Ingenieros y Agrimensores tendrá la facultad durante el proceso de recibir e investigar querellas y de imponer las sanciones que correspondan, según la magnitud de la falta incurrida, *incluyendo la suspensión* del colegiado. Acto seguido dispone, en lo pertinente:

> *En los casos que conlleven la suspensión del colegiado, el Colegio instituirá el correspondiente proceso de cancelación o suspensión de licencia ante la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico dentro de un término de quince (15) días. Cuando se decrete la suspensión por el Colegio, el colegiado no podrá practicar la profesión durante el período que dure la suspensión, no podrá disfrutar de las actividades y los beneficios que se proveen en este Capítulo y [en] el reglamento.* 20 L.P.R.A. sec. 732(h).

Un análisis de esta disposición, integrado con un análisis de las disposiciones sobre la Junta Examinadora, refleja que se le exige al Colegio de Ingenieros y Agrimensores el requisito de acudir a la Junta en los casos en que determine que procede la suspensión de la colegiación. Aunque se faculta al Colegio de Ingenieros y Agrimensores para que en el ejercicio de su poder para investigar quejas, de ser necesario, decrete la suspensión, la cual conlleva inhabilitar al profesional de la capacidad de ejercer su profesión, se le ordena que en estos casos *instituya el procedimiento de cancelación de licencia ante la Junta Examinadora.*([8]) Se reitera la intención legislativa de la interven-

---

([8]) La Ley Núm. 12 de 29 de septiembre de 1980 (20 L.P.R.A. sec. 731 *et seq.*) es clara en cuanto a su mandato de que corresponde al Colegio de Ingenieros y Agrimensores, en casos de suspensión del profesional, instituir el correspondiente procedimiento de cancelación o suspensión de licencia ante la Junta Examinadora. No tenemos ante nosotros un caso en el cual se alegue que el Colegio, haciendo caso omiso de la ley, esté suspendiendo a sus miembros sin iniciar el correspondiente procedimiento ante la Junta Examinadora. No nos corresponde, pues, pasar juicio sobre las actuaciones del Colegio de Ingenieros y Agrimensores.

ción del organismo estatal, en casos que conllevan la privación de la colegiación con el subsiguiente efecto de impedir el ejercicio de la profesión. Aunque expresamente se faculta al Colegio a decretar la suspensión, se le exige que en el término de quince (15) días inicie el proceso ante la Junta Examinadora, pues a ésta le corresponde cumplir diligentemente con el mandato de ley. La disposición citada también hace claro que nada de lo dispuesto tiene el propósito de limitar la facultad de la Junta Examinadora para iniciar, por su cuenta, procedimientos de cancelación y suspensión de licencias profesionales.

El historial legislativo de la Ley Orgánica del Colegio de Arquitectos tampoco sostiene la conclusión a la que llega la opinión disidente. La Ley Núm. 96, *supra*, se originó como el Proyecto de la Cámara 734 de 10 de abril de 1978, 8va Asamblea Legislativa, 2da Sesión Ordinaria. En su versión original, la Sec. 2(h) que versa sobre la facultad del Colegio de Arquitectos para recibir e investigar las quejas disponía, en lo pertinente:

> *[El Colegio de Arquitectos de Puerto Rico tendrá facultad: p]ara recibir e investigar las quejas que se formulen respecto a la conducta de los miembros en el ejercicio de la profesión, pudiendo remitirlas a la Junta de Gobierno para que actúen y después de una vista preliminar, en la que se le dará oportunidad al interesado o su representante, si encontrara causa fundada,* imponer las sanciones que a su discreción corresponda, *así como instituir el correspondiente procedimiento de cancelación de licencia ante la Junta Examinadora, conforme al medio procesal por ésta establecido y presentará y sostendrá los cargos.*[9] (Énfasis suplido.)

Esta sección sufrió una serie de enmiendas por recomendación de la Comisión de Gobierno de la Cámara.[10] En lo que respecta a las sanciones que puedan imponerse, la Comisión recomendó que se insertara "conforme a su

---

[9] P. de la C. 734 de 10 de abril de 1978, 8va Asamblea Legislativa, 2da Sesión Ordinaria, págs. 4–5.

[10] *Véase* Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 734 de 22 de mayo de 1978, *supra*.

reglamento". La enmienda fue aprobada el 23 de mayo de 1978.([11]) De lo anterior se desprende que la intención legislativa no fue dejar al arbitrio de la Junta de Gobierno las sanciones que han de imponerse, sino exigir que ellas quedaran establecidas en el reglamento del Colegio. Se limitó la discreción de la Junta de Gobierno del Colegio de Arquitectos a las sanciones pautadas en su reglamento.

Hemos examinado el Reglamento del Colegio de Arquitectos y nada hay en él referente al tipo de sanciones que impondrá la Junta de Gobierno a aquellos profesionales que se encuentren incursos en violaciones a los cánones de ética profesional en el ejercicio de la profesión. La única referencia a medidas disciplinarias se encuentra en el Cap. III, Art. 18 que establece que los miembros del Colegio que violen el Código de Ética Profesional estarán sujetos a medidas disciplinarias por el Colegio a través del Comité de Ética. Cap. III, Art. 18 del Reglamento del Colegio de Arquitectos de Puerto Rico, según enmendado a septiembre de 1991, pág. 18.

En estricta juricidad y ante el mandato legislativo de que dichas sanciones deben quedar establecidas en su reglamento, el Colegio de Arquitectos carece de facultad para, en estos momentos, imponer cualquier tipo de sanción. La Ley Núm. 96, *supra*, expresamente exige que las sanciones que habrán de imponerse deben de constar en el reglamento. Es necesario que el Colegio, ante el mandato legislativo, corrija esta laguna en su reglamento.

A diferencia de lo anterior, el Cap. VIII, Arts. 5 y 6 del Reglamento del Colegio de Ingenieros y Agrimensores de agosto de 1992, págs. 26–27, establece todo lo referente a medidas disciplinarias. El Art. 5, *supra*, dispone que corresponde al Comité de Ética imponer las medidas disciplinarias que estime convenientes. El Art. 6, *supra*, establece cuáles serán estas medidas: "represión verbal, represión

---

([11]) *Véanse* las Minutas de la Cámara de Representantes sobre la aprobación del P. de la C. 734 de 23 de mayo de 1978, *supra*.

por escrito, suspensión temporal de la condición de colegiado y expulsión del colegio."

El Colegio no ha cumplido con el mandato legislativo de plasmar en su reglamento las sanciones que habrán de imponer cuando ejerce su facultad de investigar las querellas. Una vez incorpore en su reglamento las sanciones correspondientes, el Colegio quedará autorizado por ley para imponerlas. Esto, siempre y cuando tome en cuenta el esquema legislativo vigente que requiere que ante una determinación de suspensión de colegiación, el Colegio diligentemente inicie el correspondiente proceso de cancelación de licencia ante la Junta Examinadora. Se requiere que la Junta Examinadora revoque o suspenda la licencia para que el arquitecto querellado quede, en efecto, privado del ejercicio de su profesión.

Un análisis de las leyes habilitadoras de los otros colegios profesionales sostiene nuestra posición.[12] Todas ellas requieren la intervención del Estado mediante las juntas examinadoras correspondientes en aquellos casos disciplinarios que puedan conllevar la suspensión o separación de la práctica profesional de alguno de sus miembros. La política pública reiterada a través de todas estas leyes orgánicas es la de otorgar a los colegios profesionales la facultad de iniciar e investigar querellas y de determinar que hay causa fundada, y aún en casos en que la ley le otorgue la facultad de imponer sanciones, iniciar el procedimiento adecuado ante la Junta Examinadora correspondiente, a quien le corresponde la determinación de privar al profesional del ejercicio de su profesión.

Nada de lo antes expresado tiene el efecto de debilitar o

---

[12] Para un análisis de las facultades de los colegios profesionales: Colegio de Abogados de Puerto Rico, 4 L.P.R.A. sec. 773; Colegio de Farmacéuticos de Puerto Rico, 20 L.P.R.A. sec. 432; Colegio de Optómetras de Puerto Rico, 20 L.P.R.A. sec. 545b; Colegio de Barberos y Estilistas en Barbería, 20 L.P.R.A. sec. 582b; Colegio de Contadores Públicos Autorizados de Puerto Rico, 20 L.P.R.A. sec. 794(h); Colegio de Peritos Electricistas de Puerto Rico, 20 L.P.R.A. sec. 2012(g); Colegio de los Técnicos Dentales de Puerto Rico, 20 L.P.R.A. sec. 2105(g); Colegio de Especialistas de Belleza de Puerto Rico, 20 L.P.R.A. sec. 2118(g); Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico, 20 L.P.R.A. sec. 2145b; Colegio de Tecnólogos Médicos de Puerto Rico, 20 L.P.R.A. sec. 2159(g).

menospreciar la función del Colegio en nuestra sociedad. Reconocemos la importancia de los colegios profesionales en nuestros tiempos. Éstos cumplen un valioso propósito al velar por la excelencia en la profesión que representan. De igual modo sirven de gran ayuda a los organismos de regulación del Estado en el ejercicio de recibir e investigar querellas. Sin embargo, reconocer el valor y los méritos de los colegios profesionales no puede llevarnos a ignorar un esquema estatutario vigente que claramente requiere la intervención estatal para privar a un profesional de la capacidad de ejercer su profesión.

Por entender que nuestra interpretación de las leyes aplicables hace innecesario entrar en la discusión del problema constitucional de la indebida delegación de poderes, y que una interpretación razonable, armoniosa y cónsona con los propósitos legislativos exige que toda determinación que tenga como consecuencia la de inhabilitar a un arquitecto del ejercicio de su profesión requiere la intervención de la Junta Examinadora, concurrimos con la sentencia de esta Curia. Procede confirmar.

Adoptar otra interpretación de las disposiciones cuestionadas alteraría el delicado equilibrio de poderes creado por la Asamblea Legislativa para reglamentar y fiscalizar la profesión de arquitectura en Puerto Rico. Por fíat judicial se le otorgaría al Colegio un poder absoluto en el proceso de suspender a los arquitectos que es contrario al espíritu y la letra de la ley y que en esencia socava la autoridad de la Junta Examinadora.

Otorgar un poder semejante al Colegio establecería un precedente peligroso. Delegar en un colegio profesional la facultad, no dispuesta en la ley, de unilateralmente poder determinar que uno de sus miembros quede privado de la facultad de ejercer su profesión, podría darse el caso que en ocasión de rencillas o desacuerdos profesionales, o en aras de ciertos intereses económicos,[13] una facción controlante

---

[13] El criterio del interés pecuniario de los miembros del grupo regulador amerita examen y ponderación. *Véase* G.W. Liebmann, *Delegation to Private Parties*, 50 Ind. L. Rev. 650, 718 (1975).

de la agrupación incurra en claros abusos de poder. Nada hay en los autos que refleje que esta situación es la que se presenta en este caso particular. Al contrario, el Colegio siempre se ha destacado por su integridad y celo profesional. Pero en nuestro ejercicio de pautar derecho no podemos obviar la posibilidad de que un grupo regulador compuesto *exclusivamente* por profesionales pertenecientes a la profesión regulada pueda incurrir en determinaciones arbitrarias o discriminatorias.([14]) Conservan toda su vigencia las palabras del Prof. Louis L. Jaffe:

> It is undeniable that almost any imaginable group given extensive powers may opress the minority of the group and exploit other groups.([15])

Por ende, procede confirmar la sentencia del Tribunal de Circuito de Apelaciones.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la que se unen el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón.

### I

Debemos resolver si la Ley Orgánica del Colegio de Arquitectos de Puerto Rico autoriza a esta entidad a suspender a uno de sus miembros del ejercicio de la profesión sin la intervención de la Junta Examinadora de Ingenieros,

---

([14]) Esta posibilidad fue considerada por el Tribunal Supremo de Estados Unidos en *Gibson v. Berryhill*, 411 U.S. 564 (1973), que sostuvo una determinación de un tribunal inferior que dictaminó que una junta estatal que regulaba el ejercicio de la optometría, compuesta exclusivamente por optómetras con negocios propios, había discriminado contra los optómetras que trabajaban para corporaciones, pues tenían un interés pecuniario en limitar la entrada de las corporaciones al campo de la optometría.

([15]) L.L. Jaffe, *Law Making by Private Groups*, 51 Harv. L. Rev. 201, 251 (1937).

Arquitectos y Agrimensores. De contestarse esta cuestión en la afirmativa, debemos entonces resolver si tal facultad de suspensión del Colegio de Arquitectos es constitucionalmente válida.

## II

El 8 de abril de 1994, José M. García Gómez, arquitecto de profesión, y su esposa presentaron una demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual solicitaron órdenes de *injunction* preliminar y permanente, además de una indemnización en concepto de daños y perjuicios contra el Colegio de Arquitectos de Puerto Rico (en adelante el Colegio). En su demanda, García Gómez adujo que el 9 de febrero de 1994 la Junta de Gobierno del Colegio lo suspendió como colegiado por un período de tres años porque alegadamente había incurrido en violación a los cánones de ética profesional que rigen la conducta de los arquitectos. La Junta de Gobierno basó su determinación en un informe formulado por la Comisión de Ética Profesional del Colegio (en adelante la Comisión), en el cual se recomendaba la aludida suspensión del ejercicio profesional. Además, en dicho informe se sugería al Colegio que recomendara a la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico (en adelante la Junta Examinadora), que suspendiera la certificación de arquitecto que posee García Gómez por el mismo término de tres años y que durante ese período se le denegara la concesión de cualquier licencia que éste solicitase.

La investigación realizada por la Comisión tuvo su origen en la querella que presentara el arquitecto Otto O. Reyes contra García Gómez, en la cual alegó que éste había intervenido de manera indebida con uno de sus clientes. La Comisión, luego de celebrar la vista correspondiente y de considerar la prueba testifical y documental que le fuera presentada, emitió el informe aludido, mediante el cual concluyó que García Gómez en efecto había violado las Reglas de conducta 501 y 604 de los Cánones de Ética Profe-

sional del Reglamento del Colegio de Arquitectos de Puerto Rico de septiembre de 1992, págs. 10 y 11, respectivamente, y el Art. 6(f) de la Ley Núm. 173 de 12 de agosto de 1988 (20 L.P.R.A. sec.711n(f)).([1])

El Colegio decretó la suspensión de García Gómez, conforme con lo recomendado por la Comisión, y le fue remitida a la Junta Examinadora una copia de la resolución emitida al respecto, junto con una advertencia de que procediera conforme a derecho en lo relativo al certificado de García Gómez y a cualquier licencia solicitada por éste.

En su demanda, García Gómez alegó que la acción llevada a cabo por el Colegio le estaba ocasionando un daño irreparable en el ejercicio de su profesión. Sostuvo que a pesar de estar debidamente autorizado por la Junta Examinadora para ejercer la profesión de arquitecto, sin que al presente tal autorización haya sido revocada, la Sec. 3 de la Ley Orgánica del Colegio de Arquitectos de Puerto Rico, Ley Núm. 96 de 6 de julio de 1978 (20 L.P.R.A. sec. 753), le impide hacerlo porque establece que ninguna persona que no sea miembro del Colegio podrá practicar dicha profesión en Puerto Rico. Adujo que el Colegio por sí solo, como ente privado, no puede tener la facultad de negarle el ejercicio

---

([1]) La Regla de Conducta 501 dispone que "[l]os miembros deberán obedecer todas las leyes relativas a su profesión y no se comprometerán con ningún acto que comprenda fraude, engaño, falsedad y deshonestidad en su actividad profesional o de negocios". Reglamento del Colegio de Arquitectos de Puerto Rico de septiembre de 1991, pág. 10 (en adelante el Reglamento).

Por su parte, la Regla de Conducta 604 establece: "Los miembros no harán, a sabiendas, declaraciones falsas sobre el trabajo profesional de otros arquitectos ni perjudicarán ni tratarán de perjudicar maliciosamente sus posibilidades de trabajo o su práctica." Reglamento, *supra*, pág. 11.

El Art. 16(f) de la Ley 173 de 12 de agosto de 1988 (20 L.P.R.A. sec. 711n(f)) dispone:

"La Junta podrá, con el voto afirmativo de cinco (5) de sus miembros denegar, suspender, revocar o cancelar cualquier licencia o certificado a un aspirante o titular de la misma por:

. . . . . . . .

"(f) Ayudar, emplear, aconsejar, incitar o de alguna otra manera facilitar la práctica de la ingeniería, arquitectura, la arquitectura paisajista, o agrimensura a cualquier persona que no esté autorizada de acuerdo a las secs. 711 a 711z de este título para ejercer la práctica de estas profesiones en Puerto Rico."

de la profesión para la cual está debidamente autorizado por el Estado, sin antes comenzar el correspondiente trámite ante la Junta Examinadora y hasta tanto esta última decrete la suspensión. Expresó, además, que entender lo contrario resultaría en una indebida delegación de una función pública a un organismo privado, lo cual está prohibido por nuestra Constitución.

En su contestación a la demanda, el Colegio sostuvo que a tenor de las disposiciones de su ley orgánica, Ley Núm. 96 de 6 de julio de 1978 (20 L.P.R.A. sec. 751 *et seq.*) (en adelante la Ley Núm. 96), tiene la facultad de suspender a uno de sus miembros por violación a los cánones de ética profesional sin la intervención de la Junta Examinadora. Se fundamentó particularmente en una disposición de la ley que expresamente indica que el Colegio "podrá imponer las sanciones que a su discreción correspondan, conforme a su reglamento".

Así las cosas, las partes sometieron la controversia entre ellos a la consideración del tribunal de instancia, con arreglo a los documentos que formaban parte del expediente y con el beneficio de las comparecencias del Secretario de Justicia y del Colegio de Ingenieros como *amicus curiae.*

El 20 de abril de 1995 el tribunal de instancia emitió una sentencia en la cual concluyó que el Colegio no posee facultad en ley para suspender a uno de sus miembros del ejercicio de la profesión sin la participación de la Junta Examinadora. Según el foro a quo, para poder suspender a un arquitecto por violación a los cánones de ética es necesario iniciar el trámite pertinente ante la Junta Examinadora, y sólo después que ésta decrete la suspensión es que entrará en vigor. El tribunal fundamentó su conclusión en una analogía con los procedimientos establecidos en las leyes habilitadoras de varios otros colegios y asociaciones profesionales que requieren la intervención directa del Estado mediante sus Juntas Examinadoras para que se pueda tomar una acción disciplinaria contra alguno de sus

colegiados.(²) El tribunal también concluyó que la determinación sobre quién está calificado para ejercer una profesión es una función pública que no puede ser delegada a una entidad privada como el Colegio, sin la debida intervención del Estado. Según dicho tribunal, el Colegio, mediante su interpretación de la ley, presumió una delegación indebida de una función pública. Como consecuencia, el tribunal ordenó al Colegio la restitución de García Gómez como colegiado, con todos los derechos inherentes que ello conlleva, por todo el período de tiempo en que continuara ostentando autorización de la Junta Examinadora y mientras se mantuviera al día en el pago de la cuota. Se archivó en autos una copia de la notificación de la sentencia el 21 de abril de 1995.

Presentada una moción de reconsideración por el Colegio el 10 de mayo de 1995, el foro a quo denegó dicha petición. No obstante, enmendó motu proprio *nunc pro tunc* su sentencia anterior, a fin de hacer constar que se trataba de una sentencia parcial que adjudicaba de forma final la solicitud de *injunction*, pero que no resolvía la causa de acción por daños y perjuicios. El 17 de mayo de 1995 se archivó en autos copia de la notificación de la sentencia enmendada.

Inconforme con esa decisión, el 16 de junio de 1995 el Colegio presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones (Circuito Regional I). En síntesis, sostuvo el Colegio que el tribunal de instancia había errado al requerir la intervención de la Junta Examinadora en aquellos procesos disciplinarios que conllevan la

---

(²) Las leyes orgánicas utilizadas como ejemplo por el tribunal de instancia fueron —según lo que disponen sobre sus facultades— la del Colegio de Abogados de Puerto Rico, 4 L.P.R.A. sec. 773; la del Colegio de Farmacéuticos de Puerto Rico, 20 L.P.R.A. sec. 432; la del Colegio de Optómetras de Puerto Rico, 20 L.P.R.A. sec. 545b; la del Colegio de Barberos y Estilistas en Barbería, 20 L.P.R.A. sec. 582b(g); la del Colegio de Contadores Públicos Autorizados de Puerto Rico, 20 L.P.R.A. sec. 794(h); la del Colegio de Peritos Electricistas de Puerto Rico, 20 L.P.R.A. sec. 2012(g); la del Colegio de los Técnicos Dentales de Puerto Rico, 20 L.P.R.A. sec. 2105a(g); la del Colegio de Especialistas de Belleza de Puerto Rico, 20 L.P.R.A. sec. 2118(g); la del Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico, 20 L.P.R.A. sec. 2145b, y la del Colegio de Tecnólogos Médicos de Puerto Rico, 20 L.P.R.A. sec. 2159g.

suspensión de un arquitecto como miembro del Colegio; al expresar que las disposiciones de la ley bajo análisis son ambiguas, y al decidir que la interpretación del Colegio de la legislación en cuestión choca con los principios de nuestra Constitución.

Luego de evaluar dicho recurso, así como la oposición presentada a éste, el 24 de enero de 1996 el foro apelativo dictó una sentencia y confirmó en su totalidad el dictamen emitido por el tribunal de instancia. Dicho foro concluyó que en aquellas instancias en las cuales el Legislador ha querido delegar la facultad de suspensión a un Colegio sin la intervención del organismo estatal correspondiente, así lo ha hecho expresamente, *como ocurre en el caso del Colegio de Ingenieros y Agrimensores,* e incluso en el caso del Colegio de Arquitectos con respecto a la suspensión por falta de pago de cuota. Resolvió, además, que en casos como el de autos donde la suspensión no fue por falta de pago sino por violación a los cánones de ética, *existe una laguna legislativa con respecto al curso de acción que ha de seguirse* ante la Junta Examinadora. Expresó el foro apelativo que ante este vacío legislativo, la interpretación más razonable y la que más armonizaba con la protección de los varios intereses públicos presentes es aquella conforme a la cual antes de que entre en vigor una suspensión determinada por el Colegio, la suspensión acordada debe certificarse a la Junta Examinadora para que ésta lleve a cabo, con premura, los procedimientos que estime pertinentes. Señaló, además, que sólo de esta manera ambos organismos pueden actuar conjuntamente en la implantación del deber común que poseen de velar porque se cumpla con los cánones de ética relativos a la profesión de arquitectos. El Tribunal de Circuito de Apelaciones resolvió también que resultaba innecesario entrar a considerar la constitucionalidad de la delegación de funciones argüida por el Colegio. Señaló que cualquier mención sobre el particular hecha por el tribunal de instancia, aunque innecesaria, fue realizada con el simple propósito de puntualizar los problemas constitucionales que la interpretación del Colegio podía

ocasionar y no con el fin de adjudicar cuestión constitucional alguna. Se archivó en autos la copia de la notificación de la sentencia del Tribunal de Circuito de Apelaciones el 24 de enero de 1996.

El 23 de febrero de 1996 el Colegio presentó una petición de *certiorari* ante nos. En esencia, esbozó los planteamientos previamente argumentados ante los tribunales inferiores, mediante el señalamiento de errores siguiente:

> Primer Error: El Tribunal de Apelaciones erró al resolver que el Colegio de Arquitectos no tiene autoridad, por sí solo, sin intervención de la Junta Examinadora, para suspender como colegiado a García Gómez por haber violado los cánones de ética.
>
> Segundo Error: El Tribunal de Apelaciones erró al determinar para fines de interpretar la ley que la Constitución no permite delegar al Colegio la facultad de suspender como colegiado a García Gómez sin la intervención de la Junta Examinadora, por haber violado las reglas de ética.

El 21 de marzo de 1996 denegamos la referida petición de *certiorari.*

Oportunamente, el Colegio presentó una moción de reconsideración ante nos. Nos urgió con vehemencia a reexaminar nuestra decisión anterior. Adujo, *inter alia,* que ésta era contraria al propósito legislativo que dio lugar precisamente a la creación del Colegio.

El 3 de febrero de 1997 acogimos la moción de reconsideración presentada y expedimos el *certiorari* solicitado, a fin de evaluar más a fondo el asunto en cuestión.

El 20 de febrero de 1997 el Colegio de Ingenieros y Agrimensores de Puerto Rico solicitó una intervención a favor de la postura del Colegio, en calidad de *amicus curiae,* a lo que accedimos el 25 de marzo de 1977.

Con el beneficio de las comparecencias de todas las partes, pasamos a examinar el asunto ante nos.

## III

### A. *La legislación pertinente*

#### 1. *Leyes orgánicas de los colegios*

El 15 de mayo de 1938, por primera vez, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 319 (20 L.P.R.A. sec. 731 *et seq.*), con el propósito de organizar a aquellos profesionales que ejercían la profesión de ingeniería en la isla, mediante la creación de una entidad cuasi pública denominada Colegio de Ingenieros de Puerto Rico. Esa legislación cobijaba tanto ingenieros como arquitectos y agrimensores, ingenieros agrónomos o cualquier otra rama de la ingeniería, arquitectura y agrimensura en el país.

La creación del mencionado colegio trajo consigo la imposición de restricciones para el ejercicio de la profesión de ingeniería. Así, pues, en la Sec. 3 de la Ley Núm. 319, *supra*, se dispuso que una vez celebrada la primera junta general del Colegio, ninguna persona que no fuera miembro de éste podía ejercer la profesión de ingeniero en la isla. 20 L.P.R.A. sec. 733. La Sec. 9 de la Ley Núm. 319, *supra*, 20 L.P.R.A. sec. 739, requirió el pago de una cuota, y en su Sec. 10 (20 L.P.R.A. sec. 740) se dispuso que cualquier miembro que no pagase su cuota quedaría suspendido del ejercicio de la profesión hasta que pagara lo adeudado. De igual forma, la Sec. 2 de la citada ley autorizó al recién creado colegio a adoptar o implantar los cánones de ética profesional que regirían la conducta de sus miembros. En lo pertinente al caso de epígrafe, la Sec. 2(h) específicamente facultó al Colegio de Ingenieros y Agrimensores de Puerto Rico a

> ... recibir e investigar las quejas que se formul[aran] respecto a la conducta de los miembros en [el] ejercicio de la profesión, pudiendo remitirlas a la Junta de Directores para que act[uasen], y después de una vista preliminar, en la que se dar[ía] oportunidad al interesado o su representante, si se encontrara causa fundada, instituir el correspondiente procedimiento de destitución. 1938 Leyes de Puerto Rico 584, 585.

En 1978 la legislación aludida sufrió enmiendas sustanciales. Mediante la Ley Núm. 96, *supra*, aún vigente, la Asamblea Legislativa agrupó a todos los arquitectos en su propio Colegio, separado del de los ingenieros, y denominado Colegio de Arquitectos de Puerto Rico. En esencia, se constituyó esta entidad como una "corporación cuasi pública" y se le otorgaron las mismas facultades que tenía el anterior Colegio de Ingenieros, Arquitectos y Agrimensores. Así, pues, se requiere ser miembro de dicho Colegio como requisito obligatorio para poder practicar la arquitectura en Puerto Rico. Sec. 3 de la Ley Núm. 96, *supra*, 20 L.P.R.A. sec. 753. Asimismo, el pago de una cuota anual es indispensable para mantener activa la colegiación, y cualquier miembro que no pague dicha cuota queda "suspendido" como tal. Sec. 8 de la Ley Núm. 96, *supra*, 20 L.P.R.A. sec. 758. El Colegio también está investido con la autoridad para adoptar e implantar los cánones de ética profesional que rigen la conducta de los arquitectos.

La diferencia principal entre el esquema legislativo anterior y la nueva ley relativa específicamente a arquitectos tiene que ver con la imposición de sanciones respecto a querellas. Sobre el particular, el Legislador estableció en la Sec. 2(h) de la Ley Núm. 96, *supra*, 20 L.P.R.A. sec. 752(h), que:

El Colegio de Arquitectos de Puerto Rico tendrá facultad:

. . . . . . .

(h) Para recibir e investigar las quejas que se formulen respecto a la conducta de sus miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta de Gobierno para que actúe. Luego de una vista preliminar, en la que se dará oportunidad al interesado o su representante de ser oído, si se encontrara causa fundada, *podrá imponer las sanciones que a su discreción correspondan conforme a su reglamento,*[3] *así como*

---

[3] En su reglamento, el Colegio de Arquitectos dispuso que las reglas de conducta esbozadas en él son obligatorias y que su violación está sujeta a acción disciplinaria por parte del Colegio y/o la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores. Art. 11 del Reglamento, *supra*, pág. 6. También estableció que los miembros que violaran dichas reglas de conducta estarían sujetos a medidas disciplinarias por el Colegio de Arquitectos de Puerto Rico a través de su Comité de Ética. Art. 18 del Reglamento, *supra*, pág. 11.

*instituir el correspondiente procedimiento de cancelación de licencia ante la Junta Examinadora, conforme al medio procesal por ésta establecido y presentará y sostendrá los cargos.* Nada de lo antes dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico para iniciar por su propia cuenta estos procedimientos. (Énfasis suplido.)

La legislación anterior tenía una sección análoga a ésta, *excepto que no disponía la facultad discrecional de imponer sanciones conforme al reglamento del Colegio.* Se le concedió, pues, al Colegio una nueva facultad: la de *imponer* medidas disciplinarias.

Dos años después de haberse constituido así el Colegio de Arquitectos, la Legislatura aprobó la Ley Núm. 12 de 29 de septiembre de 1980 (20 L.P.R.A. sec. 731 *et seq.*). Mediante ésta se enmendó de nuevo la citada Ley Núm. 319, en parte para atemperarla al cambio efectuado previamente respecto a los arquitectos. En efecto, una de las enmiendas primordiales realizadas a dicha legislación fue la eliminación de cualquier referencia a la profesión de arquitectura. Así, el colegio regulado quedó denominado solamente como Colegio de Ingenieros y Agrimensores de Puerto Rico. En lo pertinente, este colegio quedó expresamente autorizado

... Para recibir e investigar las quejas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta de Gobierno para que actúe.

El reglamento(4) proveerá para la celebración de una vista en la que se conceda a las partes interesadas plena oportunidad de ser oídas, presentar prueba y contrainterrogar testigos, por sí o por representación legal, luego de la cual, y de encontrarse causa fundada, se decretarán las sanciones que correspondan con vista a la magnitud de la falta incurrida, *incluyendo la suspensión del colegiado* por el tiempo y bajo las condiciones

---

(4) En su reglamento, el Colegio de Ingenieros y Agrimensores estableció que su Comité de Ética Profesional tiene la facultad de imponer las medidas reglamentarias que estime pertinentes, entre éstas: represión verbal, represión por escrito, *suspensión temporal de la condición de colegiado* y expulsión del Colegio. Cap. VIII, Arts. 5 y 6 del Reglamento del Colegio de Ingenieros y Agrimensores de Puerto Rico de agosto de 1992.

que discrecionalmente se determinen. *En los casos que conlleven suspensión del colegiado, el Colegio instituirá el correspondiente procedimiento de cancelación o suspensión de la licencia ante la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico dentro de un término no mayor de quince (15) días. Cuando se decrete la suspensión por el Colegio, el colegiado no podrá practicar la profesión durante el período que dure la suspensión, no podrá disfrutar de las actividades y los beneficios que se proveen en este Capítulo y el reglamento.*

Nada de lo dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Examinadora para iniciar por su cuenta estos procedimientos. (Énfasis suplido.) Art. 2(h) de la Ley Núm. 12, *supra*, 20 L.P.R.A. sec. 732(h).

Con esta disposición, evidentemente quedaban equiparados ambos colegios en lo referente a la facultad discrecional de imponer sanciones conforme a sus respectivos reglamentos.

## 2. *Ley de la Junta Examinadora*

Por otro lado, además de disponer para la organización de los colegios profesionales aludidos, la Legislatura también se ocupó de velar por el ejercicio de las profesiones en cuestión, mediante la creación y el establecimiento de un organismo estatal adscrito al Departamento de Estado del Estado Libre Asociado de Puerto Rico, denominado "Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico". En 1927, mediante la Ley Núm. 31 de 26 de abril de 1927, Leyes de Puerto Rico, pág. 183, la Asamblea Legislativa no sólo creó la susodicha junta, sino que le confirió poder para anular cualquiera de las licencias expedidas, en caso de que se hubiese empleado fraude en su obtención. Sec. 12 de la Ley Núm. 31, *supra*, 1927 Leyes de Puerto Rico 189. En 1951 dicha legislación fue enmendada por la ya derogada Ley Núm. 399 de 10 de mayo, 20 L.P.R.A. ant. sec. 681 *et seq.*, para facultar a la referida junta a llevar a cabo aquellos procedimientos de cancelación de licencias que estimara procedentes cuando le fuera traída a su atención que uno de los profesionales en cuestión hubiese sido encontrado incurso en negligencia crasa, incompetencia o conducta reprobable en el ejercicio de la profesión. Art. 19 de la Ley Núm. 399, *supra*, 20 L.P.R.A.

ant. sec. 700. *Los procedimientos instituidos por estas leyes no hacían ningún tipo de referencia a participación alguna del entonces Colegio de Ingenieros en estos procesos.*

Así las cosas, a fin de atemperar la legislación aludida a la realidad profesional moderna y *para promover la participación activa de los colegios en el logro y en la fiscalización del buen ejercicio profesional*, en 1988 la Legislatura derogó la legislación aludida relativa a la Junta y en su lugar aprobó una nueva ley, la Ley Núm. 173 de 12 de agosto de 1988 (20 L.P.R.A. sec. 711 *et seq.*), la cual rige actualmente a la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores.

Debe observarse que este organismo gubernamental, desde sus inicios hasta el presente, ha tenido a su cargo tanto las profesiones de ingeniería y agrimensura como la de arquitectura. Por ello, las disposiciones de la ley sobre la Junta Examinadora guardan relación y deben interpretarse en conjunto, no solamente con la Ley Orgánica del Colegio de Arquitectos sino también con la del Colegio de Ingenieros y Agrimensores.

En la Exposición de Motivos de la ley vigente se señala expresamente que la Junta Examinadora

> ... es el vehículo del Estado para garantizar que tales profesionales [los ingenieros, arquitectos y agrimensores] estén moral y profesionalmente capacitados para rendir el servicio de calidad que nuestro pueblo merece a los fines de fomentar el bienestar público. 1988 Leyes de Puerto Rico 860.

Dicha legislación, además, dispone la *participación activa* de los respectivos colegios en los procesos de acción disciplinaria, como surge de los Arts. 15 y 18 de la Ley Núm. 173, *supra*, 20 L.P.R.A. secs. 711m y 711p, respectivamente. El citado Art. 15, dispone, en lo pertinente, que:

> Los profesionales a los cuales se les haya inactivado, suspendido o expulsado como miembros de sus respectivos colegios profesionales *en virtud de las causas y mediante los procedimientos establecidos por dichos colegios se les suspenderá su certificado o licencia, según sea el caso, mediante la certificación*

*de tal hecho por el oficial autorizado del colegio que corresponda* ante la Junta.

*Cuando luego de decretada la inactivación, suspensión o cancelación, el correspondiente colegio profesional certifique oficialmente [la] rehabilitación del profesional de que se trate, conforme a las leyes de colegiación aplicables, la Junta le reactivará inmediatamente su licencia o certificado* mediante el procedimiento y pago de derecho que se disponga en el reglamento de la Junta. Si la expulsión o suspensión es por razón de falta de pago de la cuota anual, bastará una certificación oficial del colegio correspondiente, lo que constituirá una determinación de hecho suficiente para que la Junta tome la acción que corresponda sin necesidad de seguir el procedimiento de vista que más adelante se establece para los demás casos.

La Junta establecerá por reglamento las normas necesarias para la aplicación de esta sección. (Énfasis suplido.)

Por su parte, el citado Art. 18 establece, en lo pertinente, que:

Cuando la Junta determine que procede la denegación, la suspensión provisional, la revocación permanente o la denegación provisional o permanente de renovación de licencia, así lo notificará por escrito, por correo certificado con acuse de recibo al profesional afectado, aduciendo las razones para ello. Si el profesional de que se trate no estuviese conforme con la determinación de la Junta deberá, dentro de los treinta (30) días siguientes al recibo de dicha notificación, solicitar por escrito, por correo certificado con acuse de recibo, una vista administrativa con el fin de oponerse a la acción de la Junta.

De solicitar la vista administrativa dentro del término señalado anteriormente, la Junta vendrá obligada a celebrar la misma .... 20 L.P.R.A. sec. 711p (Sup. 1996).

Con arreglo a lo reseñado antes y conforme a lo que se dispone expresamente en el Art. 16 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711n), no cabe duda de que la Junta Examinadora goza plenamente y, por sí sola, del poder de suspender, revocar o cancelar cualquier licencia o certificado de un aspirante o titular de ella, si prueba la incursión de éste en hechos que constituyan una violación a los cánones de ética profesional de cualquiera de los colegios o una violación a cualquiera de las leyes al amparo de las cuales dichas instituciones fueron creadas.

También es claro que el Colegio de Ingenieros y Agri-

mensores está autorizado a suspender como miembro a aquellos colegiados suyos que incurran en conducta profesional impropia y que la suspensión como miembro del Colegio acarrea que la persona no podrá practicar su profesión durante el período que dure la suspensión.

Finalmente, con arreglo a la legislación reseñada, también es evidente que aunque la Ley Orgánica del Colegio le otorga la facultad de suspender como miembro a un colegiado suyo, no está expresamente dispuesto en dicha ley que tal colegiado suspendido queda por ello impedido de ejercer la profesión, como sí está expresamente dispuesto en la ley orgánica del Colegio de Ingenieros y Agrimensores. ¿Significa esto que la suspensión de un arquitecto por el Colegio como miembro de éste no acarrea también la suspensión de la práctica profesional? Veamos.

B. *La facultad del Colegio de Arquitectos*

A los fines de contestar la interrogante anterior, debemos tener presente conocidos preceptos de hermeneútica jurídica. Así, pues, cuando los términos de una ley son dudosos, su sentido debe ser interpretado por medio del examen y comparación de las frases dudosas con otras que le estén relacionadas, para llegar a su verdadero significado. Art. 17 del Código Civil, 31 L.P.R.A. sec. 17; *P.P.D. v. Gobernador*, 111 D.P.R. 8 (1981). Las diferentes secciones de un estatuto deben ser interpretadas unas con otras, en conjunto, como un todo armónico y efectivo, y no separadas o aisladamente. *Pueblo en interés menor L.R.R.*, 125 D.P.R. 78 (1989); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986). Asimismo, cuando se trata de leyes que se refieren a una misma materia o cuyo objeto sea común, éstas deben ser interpretadas refiriendo unas a las otras, por cuanto lo que sea claro en una de las leyes pueda ser tomado para explicar lo que resulte dudoso en otra. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18; *Pueblo v. Zayas Colón*, 139 D.P.R. 119 (1995); *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989);

*Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989). En el examen de una legislación, los tribunales tienen el deber de interpretar las disposiciones de manera armoniosa, que no conduzcan a resultados absurdos. *PARDAVCO, Inc. v. Srio. de Hacienda*, 104 D.P.R. 65 (1975).

Las referidas normas de hermenéutica son de particular importancia en casos como el de autos, en el cual el asunto concreto que nos concierne no fue expresamente mencionado o discutido en ninguno de los documentos que componen el historial legislativo de las leyes aludidas. En razón de ello no contamos con una expresión específica de la intención del Legislador, por lo que debemos interpretar la legislación en cuestión, conforme a las normas de hermenéutica referidas.

Con arreglo a dichas normas, debe resaltarse, en primer lugar, que todas las piezas legislativas pertinentes vigentes reflejan el innegable propósito de darle a los colegios profesionales una función sustancial en relación con la promoción de la buena conducta profesional y en relación con la vigilancia y fiscalización del comportamiento de sus colegiados que son necesarias para asegurar la conducta profesional propia. Sobre este particular no existen diferencias en los respectivos esquemas legislativos del Colegio de Ingenieros y Agrimensores y del Colegio de Arquitectos. Éste, como áquel, está expresamente facultado, por igual, para adoptar e implantar cánones de ética profesional; para recibir, investigar y adjudicar quejas que se le formulen con respecto a la conducta de sus colegiados, y para imponer "las sanciones ... que correspondan" de acuerdo con tales quejas.

En segundo lugar, es evidente también que el Colegio de Ingenieros y Agrimensores y el Colegio de Arquitectos son legislativamente dos instituciones gemelas. Originalmente constituían una sola entidad, y aún hoy día un mismo organismo estatal ejerce una idéntica jurisdicción respecto a ellas. Están organizadas y reglamentadas por ley de manera fundamentalmente igual, por lo que su esencial simi-

laridad como asociaciones de profesiones afines es indudable.

Más importante aún, es menester enfatizar que conforme el Art. 27 de la Ley Núm. 173, *supra*, 20 L.P.R.A. sec. 711x que regula en común el ejercicio de ambas profesiones —la de ingenieros y la de arquitectos— es *ilícito* practicar dichas profesiones si no se cumplen *dos requisitos esenciales*, a saber: (1) poseer la correspondiente licencia que emite la Junta Examinadora, y (2) ser miembro activo del colegio correspondiente. En efecto, conforme al claro esquema legislativo para ejercer estas profesiones, la persona interesada tiene que estar debidamente acreditada tanto por la Junta Examinadora como por el colegio, por lo que si alguno de estos dos entes le quita tal acreditación, la persona está impedida de ejercer. El esquema legislativo respecto a estas profesiones es claro. Para ejercer como ingeniero, agrónomo o arquitecto se necesita tener una *doble autorización*: (1) la que provee la Junta Examinadora, que es la única que tiene por ley facultad para emitir la *licencia* correspondiente; (2) la que provee el colegio correspondiente, ya que todas las tres leyes pertinentes exigen que el profesional en cuestión sea *miembro de su colegio*, y sólo el colegio mismo tiene autoridad expresa para suspender a colegiados de ser miembros del colegio. En efecto, la facultad para suspender a un profesional del ejercicio de su profesión la tienen tanto el colegio correspondiente como la Junta Examinadora. Nada en el esquema legislativo, relativo a estas profesiones, requiere que el colegio y la junta actúen siempre conjuntamente para efectuar tal suspensión.

A la luz de lo anterior, debería resolverse que como el Colegio tiene la misma facultad que el Colegio de Ingenieros y Agrimensores para suspender a uno de sus miembros de pertenecer al colegio, tal suspensión conlleva igualmente que el suspendido quede privado del ejercicio profesional. Este resultado procede inevitablemente de lo señalado en el párrafo anterior, sobre el requisito esencial de ser miembro del colegio como condición para poder ejer-

cer, dispuesto por la ley que regula ambas prácticas profesionales. Procede también de la esencial similaridad que por disposición legislativa existe entre ambos colegios, por lo que no tiene sentido jurídico alguno que uno tenga la facultad aludida y el otro no. Procede, además, de la innegable facultad que tiene el Colegio de recibir, investigar, adjudicar y *sancionar* quejas sobre una conducta profesional impropia. Tal facultad no tendría sentido práctico, sino acarrea la de interrumpir el ejercicio profesional. No es coherente otorgar una amplia facultad para "sancionar" la conducta profesional impropia si a la vez ello no incluye la de restringir la práctica profesional.

Reconocemos que las consecuencias específicas de las respectivas facultades para suspender a miembros del Colegio de Ingenieros y Agrimensores y del Colegio de Arquitectos no están formuladas en términos idénticos en las respectivas leyes orgánicas de estos colegios. Pero las diferencias que existen son evidentemente de *redacción.* Luego de haber visto racionalmente y en conjunto todas las leyes pertinentes, surge claramente de ellas un esquema fundamental común que no debe soslayarse sólo porque no exista perfecta identidad en la redacción de las leyes particulares. Por ello, pues, reiteraríamos que las facultades relativas al ejercicio profesional, como los procedimientos disciplinarios correspondientes de estos dos colegios, son esencialmente iguales. Como la suspensión como miembro del Colegio de Ingenieros y Agrimensores, decretada por éste, por expresa disposición de ley conlleva la suspensión del ejercicio profesional, igual efecto tiene la suspensión como miembro del Colegio de Arquitectos, cuando éste la decreta. No hay razones coherentes en derecho para llegar a otro resultado.

IV

*La constitucionalidad de la facultad delegada*

No cabe duda alguna de que el Estado tiene amplia autoridad para regular el ejercicio de la profesión de arquitecto. Tal potestad hoy no se discute. *Pérez v. Junta Dental*, 116 D.P.R. 218 (1985). Es igualmente indudable que actuando al amparo de esa amplia autoridad, la Asamblea Legislativa del Estado Libre Asociado puede delegar en otras entidades la función de reglamentar lo relativo a la admisión y al ejercicio de la profesión, siempre que ello sea razonable. El criterio constitucional pertinente es uno de racionalidad. *Pueblo v. Villafañe, Contreras*, 139 D.P.R. 134 (1995); *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567 (1993); *Román v. Trib. Exa. de Médicos*, 116 D.P.R. 71 (1985). A la luz de estos conocidos principios, no tiene validez alguna el planteamiento del recurrido de que la facultad en cuestión no puede delegarse a una "entidad privada". Por propia disposición de su ley, el Colegio no es meramente una entidad privada. Ciertamente es válida la delegación aludida.

La única cuestión constitucional que realmente podría argumentarse en un caso como el de autos es si la determinación del Colegio de suspender a uno de sus miembros se hizo conforme a lo requerido en el debido proceso de ley. En este caso, la Comisión de Ética del Colegio celebró una vista para considerar la querella contra García Gómez; escuchó a las partes; recibió prueba testifical y documental, y resolvió conforme a ésta. Se cumplieron, pues, las exigencias básicas del debido proceso de ley. En efecto, ello no se ha cuestionado ante nos.

V

Conforme todo lo previamente señalado, debería concluirse que el Colegio estaba autorizado para suspender —como lo hizo— a uno de sus miembros por violación a los

cánones de ética, sin la previa intervención de la Junta Examinadora. En razón de ello se debería dictar la sentencia para revocar los dictámenes de los tribunales inferiores y para poner en vigor la suspensión de García Gómez como colegiado, ordenada por el Colegio.[5] Lamentablemente no existe una mayoría del Tribunal que avale esta posición. Como por empate en la votación de los miembros de este Foro que han participado en el caso de autos, se confirma el dictamen del Tribunal de Circuito de Apelaciones, y por ende el de instancia, que estimo erróneos, disiento de ese resultado.

---

[5] Debemos hacer constar que como el recurrido optó por presentar una acción independiente de *injunction* y de daños contra el Colegio de Arquitectos, en vez de solicitar la revisión judicial de la determinación de dicho Colegio de suspenderlo del ejercicio de la profesión, tal determinación no ha estado ante nuestra consideración. Por ello, al apoyar que se ponga en vigor la suspensión decretada por el Colegio, lo hacemos sin haber pasado juicio sobre la corrección de la sanción impuesta. La corrección de dicha sanción no fue impugnada ante nos.