*699 TEXTO COMPLETO DE LA SENTENCIA
Por tratarse de una misma sentencia emitida por el Tribunal de Primera Instancia, Sala de Ponce, ordenamos mediante resolución del 29 de junio de 2009, la consolidación de los recursos de apelación KLAN-09-00797, instado por Osvaldo Cabral de Angelis, y el recurso KLAN-09-00829, presentado por Carla Liz Castañer.
Ambos coapelantes acuden ante nos de una sentencia emitida por el Tribunal de Primera Instancia, Sala de Ponce, que le fijó a Cabral de Angelis una pensión alimentaria final de $1,776 a favor de la menor habida con la coapelante Carla Liz Castañer, efectiva al 1 de julio de 2008.
Alega, en síntesis, el coapelante Cabral de Angelis en su recurso de apelación KLAN-09-00797, que el tribunal de instancia incidió al admitir en evidencia prueba documental que no cumplía con nuestro ordenamiento evidenciario y al imputarle un ingreso mensual, mayor al que éste recibe. Por su parte, la coapelante Carla Liz Castañer alega en su recurso KLAN-09-00829, que el foro de instancia incidió al no imponerle al alimentante el pago de pensión alimentaria, retroactivo a la fecha de su reclamación y al denegar su moción solicitando determinaciones de hechos adicionales.
Considerados los recursos de apelación instados por ambos coapelantes, se modifica el dictamen emitido por el tribunal de instancia, a fin de aclarar que la pensión alimentaria impuesta a Cabral de Angelis es retroactiva al 24 de mayo de 2007. Veamos porqué.
I
Los hechos procesales del presente litigio tuvieron sus inicios durante el año 2007, cuando se notificó la sentencia disolviendo el vínculo matrimonial habido entre los litigantes Osvaldo Cabral de Angelis y Carla Liz Castañer. Durante el matrimonio habido entre ambos coapelantes, éstos procrearon una niña de siete años de edad, la cual reside con su madre. En la sentencia de divorcio se estableció una pensión alimentaria provisional *700 al coapelante Cabral de Angelis, por la suma de $872 mensuales a favor de la menor.
El 17 de junio de 2008 se celebró vista ante la oficial examinadora para fijar la pensión final, a la cual comparecieron ambos litigantes acompañados de sus respectivos abogados. Durante dicha vista, la oficial examinadora admitió en evidencia prueba documental presentada por Carla Liz Castañer, para demostrar el sueldo alegadamente devengado por Cabral de Angelis.
A base de dicha prueba documental en conjunto con el testimonio de la coapelante Carla Liz Castañer, la oficial examinadora le imputó al coapelante Cabral de Angelis, un ingreso neto de $4,042.47. Considerando dicho ingreso, la oficial examinadora rindió un informe recomendando se estableciera pensión alimentaria final de $1,776 mensuales a favor de la menor habida entre ambos litigantes. (Ap. I de KLAN-09-00829, págs. 3-4.)
El tribunal de instancia dictó resolución donde acogió favorablemente la recomendación de la oficial examinadora y procedió a imponerle al coapelante Cabral de Angelis la pensión alimentaria final de $1,776 mensuales, efectivo el 1 de julio de 2008, y $600 por concepto de honorarios de abogado. (Ap. I de KLAN-09-00829, pág. 2.)
Por no estar conformes con tal determinación, ambos litigantes acuden ante nos mediante sus respectivos recursos de apelación.
n
Expuestos los hechos pertinentes, procedemos a discutir la norma jurídica aplicable, a ambos recursos apelativos.
Los casos de alimentos, en específico los relativos a menores de edad, están revestidos del más alto interés público. Martínez v. Rodríguez, 160 D.P.R. 145, 150-151 (2006). Tal interés es uno de categoría suprema que se fundamenta, entre otros, en los principios de solidaridad humana y en los derechos fundamentales del ser humano. Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, San Juan Ed. Programa de Educación Jurídica Continua, Universidad Interamericana, 2002, Vol. II, pág. 1413. Respecto a los menores de edad, se ha señalado que el derecho de éstos a recibir alimentos es parte esencial del principio natural de conservación que constituye piedra angular del derecho constitucional a la vida. Chévere v. Levis, 150 D.P.R. 525, 533-534 (2000).
Los litigantes, en los casos para fijar pensión alimentaria, tienen derecho al descubrimiento de prueba, sobre la situación económica tanto del alimentante como del alimentista, antes de fijarse o modificarse la pensión alimentaria, según lo dispone la Ley de ASUME en su Artículo 16. 8 L.P.R.A. see. 515; Chévere v. Levis, supra, 544. Cf. Álvarez v. Arias, 156 D.P.R. 352, 367 (2002). Asimismo, la referida ley de ASUME, supra, dispone en su Artículo 18, que “las Reglas de Evidencia, Ap. IV del Título 32, se aplicarán a los procedimientos ante el Examinador”. 8 L.P.R.A. see. 517(1).
A fin de determinar la capacidad económica de cada alimentante, es preciso tomar en cuenta todos los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal (PIPE). Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 412 (1993); Arguello v. Arguello, 155 D.P.R. 62, 72 (2001). El tribunal de instancia puede considerar, además, aspectos, tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso, antes de fijar la pensión alimentaria. López v. Rodríguez, 121 D.P.R. 23, 33 (1988).
En aquellos casos donde el alimentante alegue que sus ingresos han disminuido, el tribunal de instancia debe distinguir entre las situaciones en que la reducción de ingresos ha ocurrido por razones legítimas y los *701 casos en que la reducción ha sido deliberada o se debe a la falta de diligencia o a la dejadez del alimentante. El foro de instancia debe considerar el estilo de vida del alimentante, sus propiedades, su profesión y preparación académica, su historial de empleo y de ingresos y otros factores similares para imputarle ingresos al alimentante razonablemente, más allá de lo que éste alegue o intente probar sobre el particular. Argüello v. Argüello, supra, pág. 74. Véase, además, Sarah Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, San Juan, 2006, T. II, págs. 10.39-10.41.
Abundando al respecto, las Guías Mandatorias para la Fijación y Modificación de Pensiones Alimentarias (Reglamento Núm. 7135 de 2006), vigentes desde el 24 de mayo de 2006, establecen ciertos criterios para la imputación de ingresos. Específicamente se dispone en el Artículo 7(A)(1), que se pueden imputar ingresos al alimentante cuando “[...] existan indicios o señales de que el ingreso de la persona custodia o no custodia es mayor al que ésta informa. [...]”.
Una vez fijada la pensión alimentaria, el Artículo 147 del Código Civil establece que la obligación de dar alimentos será exigible desde que la persona con derecho a percibirlos los necesite, pero se abonarán desde la fecha en que se interponga la demanda en la cual se reclamen. 31 L.P.R.A. see. 566. Asimismo, el Artículo 19 de la Ley de ASUME, establece que los pagos por concepto de pensiones alimentarias y de aumentos en las mismas “serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal”. 8 L.P.R.A. see. 518.
Nuestro más alto foro dispuso en Quiles Pérez v. Cardona Rosa, opinión de 4 de junio de 2007,2007 J.T.S. 116, pág. 1605, que un aumento de pensión alimentaria debe ser retroactivo porque la legislación establece que los pagos y aumentos serán efectivos desde la fecha en que se radicó la petición de alimentos. Por lo tanto, “el momento determinante del pago de los alimentos es la fecha de su reclamación”. Pueblo v. Zayas Colón, 139 D.P.R. 119, 125(1995).
Por último, el tribunal apelativo, en su función revisora, no debe intervenir con la apreciación de la prueba que haga el foro de instancia y con la manera en que dirime la credibilidad de los testigos, en ausencia de una demostración por parte del apelante que hubo pasión, prejuicio, parcialidad o error manifiesto. Colón v. Lotería, 167 D.P.R. 625, 659-660 (2006); S.L.G. Giovanetty v. E.L.A., 161 D.P.R. 493, 518 (2004).
ni
A continuación, procedemos a discutir de manera independiente las controversias alegadas por los coapelantes en sus respectivos recursos de apelación.
A
Recurso de apelación KLAN-09-00797
Según alega el coapelante Cabral de Angelis en su recurso KLAN-09-00797, el tribunal de instancia incidió al admitir en evidencia prueba documental que no cumplía con nuestro ordenamiento evidenciario y al imputarle un ingreso mensual, mayor al que éste recibe.
No le asiste la razón. Veamos porqué.
Es menester señalar, en primer lugar, que ninguna de las partes sometió la PIPE actualizada, sino que del Informe de la oficial examinadora surge que “actualizaron las mismas con sus declaraciones”. Asimismo, que el foro de instancia otorgó credibilidad al testimonio prestado por la coapelante Castañer.
Por lo cual, en cuanto a la imputación de ingresos efectuada por el foro de instancia al coapelante Cabral de $4,042.47 neto mensual, dicho foro judicial tomó en consideración el testimonio de la apelada, determinando en *702 su Acta-Informe la oficial examinadora, que:
“De la declaración de la parte custodio surgió que el alimentante cobraba una cantidad en la nómina del restaurante y otra cantidad en efectivo. La parte custodio declaró que en algunas ocasiones ella fue a cobrar con el alimentante.
Entendiendo que el ingreso bruto mensual asciende a $4,700 menos las deducciones legales, se le imputa al alimentante capacidad para generar un ingreso neto mensual de $4,042.47.”
Ap. I de KLAN-09-00829, págs. 3-4.
Asimismo, de la transcripción de la prueba surge que el testimonio de la coapelante Castañer respecto a la capacidad económica de Cabral, fue el siguiente.
“Ledo. Capó: A mayo de 2007, usted me va a decir, ¿si tiene conocimiento personal de cuáles eran los ingresos promedio de su esposo?
Sra. Castañer: $4,500.
Ledo. Capó: ¿Cómo usted sabe eso?
Sra. Castañer: Lo sé porque, pues, era mi esposo, yo sabía del dinero y además de las cuentas que cubría completa.
Ledo. Capó: ¿Dónde trabaja él? En capacidad de qué?
Sra. Castañer: En el Rincón Argentino.
Ledo. Capó: ¿Y de quién es esa compañía?
Sra. Castañer: De su familia, de su papa (sic), de él.
Ledo. Capó: ¿Que puesto ocupaba él en ese lugar?
Sra. Castañer: El era o es gerente administrativo.
Ledo. Capó: Ese restaurante, ¿cómo se subdivide? Si usted conoce.
Sra. Castañer: Se que tienen corporaciones.”
T.E., págs. 4-5.
En cuanto a la manera en que el coapelante Cabral cobraba su ingreso proveniente del Restaurante Rincón Argentino, del testimonio de la coapelante Castañer, surge que:
“Ledo. Capó: ¿Cómo era la manera que el cobraba mientras usted estaba junto con él en el Rincón Argentino? Explíqueme lo de las partidas cómo era eso.
Sra. Castañer: El cobraba por nómina, y eso era lo qne el reportaba. Pero el resto lo cobraba en efectivo, con cheques de otras corporaciones. Pagaba muchas cosas con cheques de corporación.
*703 Ledo. Capó: ¿Muchas cosas que, personales de ustedes?
Sra. Castañer: Si y de la nena y el pago de la matrícula del Caribbean salió de una de las corporaciones donde él la apuntó en ese colegio. Este.....
Ledo. Capó: O sea, usted me quiere decir que ¿nomina (sic) era una cosa y aparte de eso, cobraba unos dineros en efectivo?
Ledo. Fernández: ¡Objeción sugestiva!
La Juez: Ha lugar.
Ledo. Capó: ¿Y usted tiene conocimiento personal de eso?
Sra. Castañer: Sí, yo estuve ahí 6 años.
Ledo. Capó: ¿Usted estuvo 6 años, dónde?
Sra. Castañer: Con él y en el Rincón.
Ledo. Capó: ¿Y cómo él cobraba esas cantidades en efectivo?
Sra. Castañer: Se llevaba el “petty cash” del dinero que no se rinde, el que no se reporta a la compañía, sale un petty de esa noche, una parte se deposita la otra y la otra es que se saca el sueldo, y de ahí era donde él se sacaba la otra mitad del sueldo en efectivo.
Ledo. Capó: ¿Y eso lo hizo por cuánto tiempo?
Sra. Castañer: Eso lo hizo desde que nos casamos.” (Énfasis suplido.)
Id., págs. 6-7.
Se puede apreciar que durante el contrainterrogatorio efectuado al coapelante Cabral, éste admitió haber emitido varios cheques de la corporación Bayres Hermanos con su firma, para efectuar pagos personales como el colegio de su hija, el pronto de la casa, los gastos de cierre de la casa y facturas de la AAA, entre otros. (T.E., págs. 19-21.)
Asimismo, de la transcripción de la prueba surge el elevado estilo de vida que el coapelante Cabral disfrutaba en conjunto con la coapelante Castañer y su hija. El foro de instancia tomó en consideración sus gastos mensuales, los cuales surgen tanto de un documento de verificación de ingreso firmado por éste, como del testimonio de la coapelada Castañer, para determinar su estilo de vida. (T.E., págs. 5-6, 22-24.)
“Ledo. Capó: ¿Cuáles eran los gastos en su casa promedio mensual?
Sra. Castañer: Casi $3,000.00 diría yo. $1,123.00 de casa, $500.00 de una Grand Cherokiee (sic), $385.00 de un Honda del año, Honda Civic, en adición el cuido antes de que se matriculara la niña en el colegio que eran $375.00 mensuales, a eso le incluimos, en compra $500.00 mensual por las meriendas de la niña incluyendo todo, de luz casi $390.00 cada dos meses diríamos $180.00 ó $190.00 mensual, y de agua $80.00, $90.00, $100.00 dependiendo mensual, el cable son $50.00 dólares mensuales, los celulares eran como $50.00 yo creo que la compañía que él estaba, y yo más a menos lo mismo, el internet era $60.00.
*704 Ledo. Capó: Escuela de la niña, $375.00 mensuales. ¿Además de eso había que llevarlas a las tiendas y todo lo que era extra y eso?
[...]”.
Id., pág. 5.
Específicamente, en cuanto a la manera en que el coapelante Cabral administraba sus ingresos, la coapelante Castañer sostuvo a través de su testimonio, que:
“Sra. Castañer: En entretenimiento, comíamos casi todo el tiempo afuera, Domingos nos íbamos de “weekenes” a quedamos a hoteles.
Ledo. Capó: ¿Cuánto promedio mensual en esos gastos de entretenimiento?
Sra. Castañer: $400.00, $500.00 mensuales. Dos (2) veces viajamos fuera, fuimos dos veces a la Argentina, y nos dábamos lujos, viajes y salidas.
Ledo. Capó: Eso sin incluir gastos de ropa suyo y ropa de él.
Sra. Castañer: Es correcto.
Ledo. Capó: Además de lo fijo, ¿Cómo cuánto en promedio se gastaba en esas actividades?
Sra. Castañer: Casi $2,000.00 pesos más.
Ledo. Capó: ¿Y se podía cubrir con los ingresos de esas familia?
Sra. Castañer: Todo lo cubría él, el sueldo de él, literalmente. Yo me ganaba $6.50 la hora.
[...]”.
Id., pág. 6.
Ante tales circunstancias, concluimos que fue razonable y conforme a derecho la imputación de ingreso efectuada por el foro de instancia al coapelante Cabral. El foro judicial tomó en consideración el estilo de vida de Cabral, su historial de empleo y de ingresos, otras fuentes de ingreso y otros factores similares a fin de imputarle ingresos de manera razonable. Nada nos mueve a intervenir con tal determinación, por ser razonable conforme a la prueba presentada.
Por último, respecto a la admisión de prueba documental por parte del foro de instancia sobre la capacidad económica del coapelante Cabral, es un hecho cierto que las Reglas de Evidencia “se aplicarán a los procedimientos ante el Examinador”. Véase, Artículo 16 de la Ley de ASUME, 8 L.P.R.A. see. 515. Asimismo, de la transcripción de la prueba surge que el representante legal del coapelante Cabral presentó objeción de manera oportuna a la prueba documental presentada por la coapelante Castañer.
Ahora bien, independientemente de que el foro de instancia hubiese cometido el error alegado sobre la admisión de evidencia documental, concluimos que en tal caso no se trata de un “factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita”. Regla 4 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV. Es *705 decir, que el error alegado, de haberse cometido, no tuvo un efecto directo o no fue un factor decisivo en la sentencia de alimentos dictada por el foro de instancia. Todo ello, debido a que de la prueba testifical creída por el foro de instancia, surge evidencia suficiente para imputarle al coapelante Cabral, el ingreso neto mensual que se le imputara de $4,042.47.
Por lo tanto, sólo basta confirmar el dictamen emitido por el tribunal de instancia respecto a la cuantía de alimentos impuesta al coapelante Cabral, a favor de su hija menor de edad.
B
Recurso de apelación KLAN-09-00829
Como primer error, alega la coapelante Carla Liz Castañer en su recurso KLAN-09-00829, que el tribunal de instancia incidió al no imponerle al alimentante Cabral de Angelis, el pago de pensión alimentaria, retroactivo a la fecha de su reclamación.
Le asiste la razón. El error fue cometido.
Según la norma jurídica aplicable, la fijación o el aumento de una pensión alimentaria es efectivo de manera retroactiva a la fecha de haberse solicitado. Conforme surge de los autos, el 24 de mayo de 2007, la coapelante Carla Liz Castañer presentó contestación a demanda y reconvención, a la acción de divorcio instada en su contra por el coapelante Cabral de Angelis. Mediante dicha reconvención, la coapelante solicitó en lo pertinente que se “establezca una pensión alimentaria en beneficio de la menor habida entre las partes”. (Ap. IV de KLAN-09-00829, pág. 13.)
Evidentemente, desde dicha fecha se debe hacer efectiva la pensión alimentaria permanente de $1,776 mensual fijada al coapelante Cabral de Angelis. Sin embargo, el tribunal de instancia sostuvo mediante su dictamen, que “la pensión será efectiva al 1 de julio de 2008”. (Véase, Ap. I de KLAN-09-00829, pág. 2.) Si bien es cierto que con anterioridad a dicha fecha se le había impuesto al coapelante una pensión provisional de menor cuantía, hacemos retroactivo el aumento de tal pensión provisional, a la fecha de la reconvención de la coapelante.
Se modifica el dictamen objeto de apelación, a los fines de disponer que la pensión alimentaria de $1,776 mensual impuesta a Cabral de Angelis, es retroactiva a la fecha de haberse solicitado por la coapelante Carla Liz Castañer, el 24 de mayo de 2007.
Como segundo error, sostiene la coapelante que incidió el foro de instancia al denegar su moción solicitando determinaciones de hechos adicionales.
Sobre el particular, basta con señalar que la concesión de una moción sobre determinaciones de hechos y conclusiones de derecho adicionales es de naturaleza discrecional. Concluimos que el foro de instancia en el descargo de sus funciones puede denegar tal solicitud, si entiende que en su sentencia hay suficientes determinaciones de hechos para sustentar su dictamen. (Véase, Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.) En el presente caso, no abusó de su discreción el tribunal de instancia al denegar la referida solicitud de la coapelante Carla Liz Castañer.
IV
Por los anteriores fundamentos de derecho, se modifica el dictamen emitido por el Tribunal de Primera Instancia, Sala de Ponce, a fin de disponer que la pensión alimentaria final impuesta a Osvaldo Cabral de Angelis, es retroactiva a la fecha de haberse solicitado por Carla Liz Castañer el 24 de mayo de 2007, se confirma sobre los demás extremos.
*706 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones